Frank **PHILLIPS**, Sr., and Frank Phillips, Jr., by his natural guardian, Frank Phillips, Sr., Appellants,

v.

Fred A. **TRELLO** et al.
No. 74–1012.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) June 13, 1974.

Decided July 26, 1974.

James C. Evans, Pittsburgh, Pa., for appellants.

Ronald P. Koerner, Gatz, Cohen, Segal & Koerner, Pittsburgh, Pa., for Orsini, Lucenti, Flasco & Spatara.

Carmen R. Damian, Damian & Damian, Pittsburgh, Pa., for Trello.

Albert G. Feczko, Jr., Feczko & Seymour, Pittsburgh, Pa., for Harvard & Casasanta.

Submitted Under Third Circuit
Rule 12(6)

June 13, 1974

Before STALEY, GIBBONS and WEIS, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

This is an appeal from an order of the district court which granted a Rule 12(b)(6) motion by two of seven defendants to dismiss for failure to state a cause of action against them.[1] The plaintiffs, residents of Coraopolis, Pennsylvania, alleging jurisdiction under 28 U.S.C. § 1343 and claims under 42 U.S.C. §§ 1983 and 1985, sued a councilman of Coraopolis, four local police officers, and the two appellees, Dora Harvard and Mary Casasanta, charging all defendants with a conspiracy to cause various police and other regulatory authorities of Coraopolis Borough to carry on a campaign of illegal harassment against the plaintiffs. The complaint alleges:

"7. The defendants did conspire to commit and did commit the acts set forth hereinafter in concert with each other and/or with others.

8. The defendants did commit the acts set forth hereinafter in concert with each other and/or with others.

9. The acts set forth hereinafter did subject or cause to be subjected the plaintiff to the deprivation of his rights, privileges and immunities secured by the Constitution and the laws."

It then goes on to allege the series of claimed harassments quoted in the margin[2] and alleges personal and busi-

---

[1] The case was before us on October 24, 1973 at which time we dismissed for lack of jurisdiction because there was, with respect to the order appealed from, no Rule 54(b) determination. Our order provided: "If the [Rule 54(b)] determination and direction are made, a new appeal may come before us on the present briefs and record supplemented to show subsequent proceedings." Thereafter a Rule 54(b) determination and order was made.

[2] Paragraph 10 of the complaint provides in full:

"The acts committed against the plaintiff under color of statutes, ordinances, regulations, customs or usages of the Commonwealth of Pennsylvania, County of Allegheny and Borough of Coraopolis were:

(a) The Fire Marshal of Coraopolis Borough, Eugene Zapparelli, did enter the buildings of plaintiff, Frank Phillips, Sr., on or about August 2, 1971 and did examine the same and again on August 16, 1971, along with the defendants, Fred A. Trello, Louis Lucenti, and James Spatara. On August 18, 1971, a letter was sent to the plaintiff wrongfully citing some 35 violations of rules established by the Fire Marshal in concert with others under Borough Ordinance No. 1225 to be specifically used against the plaintiff. The regulations were contrary to the law and were in conflict with the powers exercised by the State of Pennsylvania. Neither the Fire Marshal nor anyone else pursued the remedy set out under the Ordinance so as to permit the plaintiff an opportunity to test the validity of the action of the Fire Marshall [sic] in the Courts.

(b) The defendant, Louis Lucenti, went upon the resident premises of the plaintiff and specifically into his garage located thereon on or about August 2, 1971 without a warrant and illegally, ostensibly to examine a motor bike located therein. No legal proceeding in the courts were brought by the officer concerning the motor bike.

(c) The defendant, Fred A. Trello, did arrive at the commercial buildings of the plaintiff with the Borough police chief and two Allegheny County Health Department authorities or on about August 10, 1971 and did make inspections of the buildings. Defendant, Fred A. Trello, also acted as an employee of Allegheny County at this time, in addition to his other capacities as set forth hereinbefore. No legal proceedings were brought by any of the County employees concerning this inspection. At this time defendant Fred A. Trello, did slander Frank Phillips, Sr. by accusing him of acting like a god and thinking he could not be touched and also stating that he would see him (Frank Phillips, Sr.) put out of commission and would see him in court.

(d) An unknown County employee came to the commercial buildings of the plaintiff on

August 11, 1971 and did ask to inspect his restaurant license and all of the buildings. The only restaurant license in any of the buildings was issued in the name of the tenant of the plaintiff. No legal proceedings were brought by this employee as a result of this inspection.

(e) The defendant, Louis Lucenti, did on August 12, 1971 illegally and wilfully place a municipal ordinance violation tag upon a truck owned by plaintiff even though said truck was placed in a position approved by the Mayor of the Borough and was then being loaded with furniture from one of the commercial buildings of the plaintiff. No legal proceeding was brought by anyone concerning this ticket.

(f) The defendants, Louis Lucenti and Gerald Orsini, did illegally and wilfully issue two (2) citations against Frank Phillips, Jr., one for parking on the sidewalk and one for parking on the highway in violation of the laws of the Commonwealth of Pennsylvania on August 12, 1971. The truck had been placed as is set forth in paragraph (e), above, and had been tagged as is set out above. The truck was also being loaded as set out above. These two citations did result in legal proceedings and the Common Pleas Court of Allegheny County did find Frank Phillips, Jr. not guilty of violating the laws of the Commonwealth of Pennsylvania.

(g) The defendant, Louis Lucenti, after tagging the truck as set out above on August 12, 1971, did call defendant, Gerald Orsini, and upon arrival, Gerald Orsini asked the plaintiff to move the truck and was informed that he would move the truck when the loading was complete. About 15 minutes later, Frank Phillips, Jr. started to move said truck when Gerald Orsini, defendant, stopped him, demanding the owner and operator cards. When Frank Phillips, Sr. went to give the owner's card which he had in his possession, he was struck by Officer Orsini with a blackjack and pushed and shoved by both defendants, Louis Lucenti and Gerald Orsini. When Frank Phillips, Jr. went to shield his father, he was also struck with a blackjack by Officer Orsini. A neighbor of the plaintiffs was also struck by the blackjack of Officer Orsini. The plaintiffs, as well as the neighbor, were taken to the police station, booked, placed in cells and held until bond was put up for the release of the two adults, Frank Phillips, Jr., being taken from a cell to Juvenile Court and there released into the custody of his parents after a petition was filed against him.

(h) The charges brought against Frank Phillips, Sr. were assault and battery of the two officer-defendants, resisting arrest and obstructing the two officer-defendants in making the lawful arrest of Frank Phillips, Jr. The Criminal Court Division of the Allegheny County Common Pleas Court did throw out the charges of resisting arrest and obstructing the two police officer-defendants in making the lawful arrest of Frank Phillips, Jr. The jury found the plaintiff not guilty of assault and battery of the two police officer-defendants.

(i) The charges brought against Frank Phillips, Jr. were assault and battery of the two officer-defendants, resisting arrest and obstructing two officer-defendants in process. Just prior to the hearing in Juvenile Court, Fred A. Trello, defendant, did approach the Juvenile Court judge in his chambers describing himself as the chairman of Public Safety in Coraopolis for the purpose of influencing the Court, said approach being made out of the presence of Frank Phillips, Jr. and his attorney. The final order of the Juvenile Court was dismissal of all charges against Frank Phillips, Jr.

(j) The defendants, Fred A. Trello and Gerald Orsini, along with two other council members and the Fire Marshall, did on or about September 9, 1971 arrive at the commercial buildings of the plaintiff and did inspect them. No proceeding was taken as a result of this inspection.

(k) At the request and urging of the defendant, Fred A. Trello, an employee of the Department of Labor and Industry, one Mr. Bulgarelli, did arrive at the commercial buildings of the plaintiff and did inspect them on or about September 10, 1971. On or about September 13, 1971, one Michael T. Kistler, Supervisor of the Pittsburgh Office of the Bureau of Inspection of the Department of Labor and Industry, did send a letter to plaintiff listing some 20 violations of the Building Regulations of the Commonwealth of Pennsylvania. Some of these alleged violations involved buildings which had been in existence for some 6 to 10 years during which time they had been visited by the Labor and Industry Department of Inspection, one such inspector being the same Eugene Zapparelli, the Fire Marshall [sic] of Coraopolis Borough and these buildings had been approved for occupation. Some of the requests made were contrary to the facts and requirements of the law and regulations. The plaintiff was given 90 days to comply with the request in accordance with this letter.

(l) The aforesaid Michael T. Kistler, at the urging and request of Fred A. Trello, on or about September 15, 1971 or some two days after the letter set forth in paragraph (k), above, did send another letter rescinding the order of September 13, 1971, and demanding the termination of the occupancy of all except the ground floors of the building

immediately, as well as making other requests, some of which were contrary to the fact and requirements of the law and regulations.

(m) The same Michael T. Kistler, at the urging and request of Fred A. Trello, did send another letter stating that he had visited the commercial buildings of the plaintiff on September *14*, 1971 and found that the order of September *15*, 1971 had not been complied with and gave the plaintiff 5 days to comply or be faced with penal action. The plaintiff did appeal this action taken by Michael T. Kistler in accordance with the laws, rules and regulations of the Commonwealth of Pennsylvania.

(n) The defendant, Rudy Flasco, did cause to have sent to the plaintiff on or about October 8, 1971 an official notice to appear before a Justice of the Peace to answer a complaint by Officer Flasco that the plaintiff's automobile had been parked illegally on September 30, 1971 in that the back wheel was some 15 inches from the curb and the front wheel was against the curb. This complaint was not properly sworn to and was contrary to the law and the complaint was dismissed by the Court of Common Pleas of Allegheny County.

(o) The defendant, Fred A. Trello, was quoted by a newspaper on October 14, 1971, such quote having been made during a meeting of council of the Borough of Coraopolis, that he would appeal the delay in the closing down of the plaintiff's business which delay had been condemned by the defendant, Dora Harvard, in the same council meeting. This 'delay' is permitted under the laws of the Commonwealth of Pennsylvania in accordance with procedures established under such laws. The appeal stated by defendant, Fred A. Trello, was to be made to a politician with the intent to circumvent and deprive the plaintiff of his rights under the law.

(p) The plaintiff did receive an official notice to appear before a Justice of the Peace to answer the complaint of the defendant, James Spatara, such notice being sent on or about November 6, 1971. The alleged violation was of a pick-up truck of the plaintiff being parked in violation of the laws of the Commonwealth of Pennsylvania on October 30, 1971. After a hearing on this charge, the Court of Common Pleas of Allegheny County did find the plaintiff not guilty of the charge.

(q) The defendant, Dora Harvard, on or about August 18, 1971, did send a letter to the newspaper 'The Record', for the purpose of it being published and it was published. The defendant, Dora Harvard, did wrongfully accuse the plaintiff of assaulting a police officer and indicating that it had occurred on prior occasions also, of defying the police, of not being a respectable merchant, of violating laws and having an immunity because of officials in the community and of wrongfully stating that some unknown policeman had told her that he had orders to not bother the plaintiff. The defendant, Dora Harvard, further wrongfully accused the plaintiff of having an immunity from the law because of a financial interest in his commercial properties being held by some unnamed leader of the town. She also wrongfully accused the plaintiff of throwing trash into the street and not paying like the rest of the town folks for the trash and garbage collections. The purpose of this libelous letter was to give an excuse to the police and other officials of the Borough and the State to deprive the plaintiff of his rights, privileges and immunities secured by the Constitution and the laws.

(r) The defendants, Dora Harvard and Mary Casasanta, did on or about September 15, 1971 have prepared and circulated a petition or petitions directed against the plaintiff and made oral statements about helping the police and other officials to run the plaintiff out of town for the purpose of influencing the police and other officials of the Borough to act under color of statutes, ordinances, regulations, customs or usages of the Commonwealth of Pennsylvania, County of Allegheny and Borough of Coraopolis to deprive the plaintiff of his rights, privileges and immunities secured by the Constitution and laws.

(s) Defendants, Dora Harvard and Mary Casasanta, on or about October 4, 1971 did have prepared and circulated certain notices of a meeting in the Borough Building to be held on October 14, 1971 for the purposes of showing the backing of the police in their actions against the plaintiff so as to deprive the plaintiff of his rights, privileges immunities secured by the Constitution and the laws.

(t) The defendant, Fred A. Trello, caused to have information sent on or about September 15, 1971 to Nationwide Insurance Company upon which Nationwide Insurance Company relied and as a result, on September 17, 1971 did cancel the policies of insurance on the commercial buildings of the plaintiff to be effective 10 days after the receipt of the notice by the plaintiff. The information was false and the buildings had been in existence and covered by the Nationwide Insurance policies for a considerable period of time having been inspected and approved by Nationwide Insurance Company during this time and the conditions existing during this time being the same." Appendix at 5a–13a.

ness injuries including the expenditure of large sums of money to provide legal services in defense of the groundless criminal actions brought against him and his son. The order granting the Rule 12(b)(6) motion by defendants Harvard and Casasanta provides in full:

"And now, this 2nd day of March, 1973, upon consideration of motions of defendant Dora Harvard and Mary Casasanta to dismiss as to them, and of briefs in support thereof and in opposition thereto, and it appearing that said defendants are housewives and residents of Coraopolis, and that nothing is alleged against them except exercising their constitutional rights of petitioning their borough council for redress of grievances and of writing letters for newspaper publication [see Eastern R. R. Presidents Conference v. Noerr Motor Freight Inc., 365 U.S. 127, 135, 136, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); N. Y. Times v. Sullivan, 376 U.S. 254, 266, 84 S.Ct. 710, 11 L. Ed.2d 686 (1964)]; and it also appearing that said defendants are private citizens and that no State action is involved insofar as they are concerned;

It is ordered that said motions be and it hereby is granted, and the above-styled action be and it hereby is dismissed as to said defendants." Appendix at 33a–34a.

We reverse.

### I.

■ There is no doctrine that housewives or residents of Coraopolis are immune from suit.

### II.

The complaint certainly alleges more than the facts that Harvard and Casasanta petitioned the borough council for redress of grievances and wrote letters for publication in newspapers. It alleges that all the defendants, the above included, acting in concert, conspired to commit the acts set forth in paragraph 10 of the complaint.

### III.

The complaint sufficiently sets forth a cause of action under the Civil Rights Acts to survive a Rule 12(b)(6) motion.

### A. *The § 1983 cause of action*

■ An action based upon § 1983 involves two distinct elements. First, the plaintiff must assert a deprivation of rights, privileges and immunities secured by the Constitution and laws. Next an assertion must be made that the defendants acted "under color of" state law. The appellees do not seriously contest that the charge of conspiracy to subject a citizen to such acts of improper harassment as illegal searches in violation of the fourth amendment is insufficient to satisfy the first element of a § 1983 action. They contend, however, that since they are citizens holding no official capacity, they cannot be regarded as having acted "under color of" state law. But the law has long been settled that when two or more persons conspire to violate the civil rights of another, if one or more of the conspirators is a state officer acting under color of state law, then the mere fact that other conspirators are not state officers is no defense to them in a suit under the Civil Rights Act. *E. g.,* Adickes v. Kress & Co., 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Gillibeau v. City of Richmond, 417 F.2d 426, 439 (9th Cir. 1969); Hoffman v. Halden, 268 F.2d 280, 298 (9th Cir. 1959); Valle v. Stengel, 176 F.2d 697, 702 (3d Cir. 1949); Picking v. Pennsylvania R. R. Co., 151 F. 2d 240, 249–250 (3d Cir. 1945). Thus the district court's stated reason for dismissing, "that no State action is involved insofar as they are concerned" must be rejected.

### B. *The § 1985 cause of action*

Moreover, the complaint relies on § 1985. In Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Supreme Court held that action "under color of state law" is not an element of a § 1985(3) cause of action.

That section makes actionable private conspiracies to deprive a citizen of the equal enjoyment of rights secured to all. Griffin v. Breckenridge overruled Collins v. Hardyman, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253 (1951), which had held that § 1985(3) did not reach the conspiracy alleged because it was private and not under color of state law. Since the plaintiffs in Griffin v. Breckenridge were Negro citizens of Mississippi and charged harassment on racial grounds, the Court expressly reserved the question whether a conspiracy motivated by invidiously discriminatory intent other than racial bias would be actionable under § 1985(3). 403 U.S. at 102 n. 9, 91 S.Ct. 1790. Since then the task of defining the scope of the private conspiracy cause of action under § 1985(3) has been going forward in the lower federal courts. *See* Hampton v. City of Chicago, 484 F.2d 602 (7th Cir. 1973); Denman v. Leedy, 479 F.2d 1097 (6th Cir. 1973); Bricker v. Crane, 468 F.2d 1228 (1st Cir. 1972), cert. denied, 410 U.S. 930, 93 S.Ct. 1368, 35 L.Ed.2d 592 (1973); Hughes v. Ranger Fuel Corp., 467 F.2d 6 (4th Cir. 1972); Azar v. Conley, 456 F.2d 1382 (6th Cir. 1972); McCurdy v. Steele, 353 F.Supp. 629 (D. Utah 1973).

Section 1985(3) was enacted as a part of the Civil Rights Act of 1871 and thus draws vitality from the fourteenth amendment as well as the thirteenth. As Judge Stevens explains:

> "With respect to plaintiff's protected interests, the language of §§ 1983 and 1985(3) also differs, but the coverage of the two provisions is probably co-extensive. Thus, the state involvement aspects of § 1983 cases which are directed to the 'protected interests' rather than the 'proscribed conduct' portion of § 1983 are relevant in understanding the coverage of § 1985(3)." Dombrowski v. Dowling, 459 F.2d 190, 194–195 (7th Cir. 1972). (footnote omitted).

Azar v. Conley, *supra,* is particularly enlightening since it recognizes a §

1985(3) cause of action on behalf of white plaintiffs based on allegations quite similar to those before us. 456 F. 2d at 1386.

Because settled law under § 1983 compels a reversal of the Rule 12(b)(6) dismissal, we think it premature to rule definitively upon appellants' contention that the complaint adequately charges a § 1985(3) private conspiracy cause of action. We do suggest that the district court must consider that contention in the light of Griffin v. Breckenridge, *supra,* if as the facts develop only a private conspiracy not within the coverage of § 1983 should be proved. It may be that a private conspiracy to cause unlawful harassment by state enforcement officials which never succeeded to the point where action "under color of state law" occurred could nevertheless cause recoverable damage. We reiterate that our discussion of § 1985(3) is intended only to raise the issue for the district court's initial consideration.

### C. The defamation allegations

■■ Paragraph 10(q) of the complaint refers to a libelous letter, and paragraph 10(r) refers to the circulation of petitions directed at instigating efforts to have the police "run the plaintiff out of town." The district court treated these paragraphs as allegations of activities protected by the first amendment. They may nevertheless be taken into consideration in evaluating the conspiracy allegation. *See* Azar v. Conley, 456 F.2d at 1390. Moreover, the plaintiff alleges that he has been personally slandered and libeled to the detriment of himself and his business. To the extent that the allegations of the complaint set forth a cause of action arising under the defamation laws of the Commonwealth of Pennsylvania, since the libels and slander are claimed to arise out of the § 1983 conspiracy, the district court may undertake pendant jurisdiction over them. Hagens v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (U.S. March 26, 1974); Rosado v.

Wyman, 397 U.S. 397, 402–405, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); United Mine Workers v. Gibbs, 383 U.S. 715, 721–729, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

The judgment of the district court will be reversed and the cause remanded for further proceedings consistent with this opinion.