The BARNES FOUNDATION, Plaintiff,

v.

TOWNSHIP OF LOWER MERION,
et al. Defendants.

Civ. A. No. 96–0372.

United States District Court,
E.D. Pennsylvania.

June 3, 1996.

Richard P. McElroy, Robert J. Sugarman, Philadelphia, PA, for plaintiff.

Paul S. Diamond, William K. Pelosi, Larry D. Wood, Jr., Anchorage, AK, for defendants.

### MEMORANDUM and ORDER

ANITA B. BRODY, District Judge.

Before me for disposition are the Motions to Dismiss filed by defendant Township of Lower Merion ("Township"), defendant Township Commissioners ("Commissioners"), and defendant neighbors ("Neighbors"). Oral argument on these motions was held on May 10, 1996. After reviewing the various arguments, I will grant the Neighbors' Motions to Dismiss on grounds of first amendment immunity (Noerr–Pennington doctrine), and will deny the Township's and the Commissioners' Motions to Dismiss the § 1983 and § 1985(3) claims. I refuse to abstain under *Younger*.

## I.  BACKGROUND

Plaintiff Barnes Foundation ("Barnes") filed this action in January, 1996, alleging that the Township, the Commissioners and the Neighbors had infringed upon Barnes' constitutional rights by acting in concert to discriminate against and harass Barnes. These actions included: enforcing existing parking, police, fire and zoning ordinances in a discriminatory manner; interfering with the reopening of Barnes in November 1995;

"closely monitoring" the actions of Barnes, including picketing and videotaping the entrance to Barnes; preventing Barnes from creating a parking lot; interfering with existing and prospective business relationships; and filing a retaliatory law suit in state court. Through these actions, Barnes claims that the defendants infringed upon its fundamental liberty and property interests; violated its right to equal protection under the 14th amendment (by selectively enforcing local laws and treating Barnes differently than other similarly situated institutions); violated its substantive due process rights (by depriving Barnes of its property interest in an irrational manner); and infringed on its first amendment rights (by filing a retaliatory law suit). Barnes brings this action pursuant to § 1983 and § 1985(3), and seeks compensatory damages, punitive damages, an injunction, and attorneys' fees and costs.

## II.  DISCUSSION

██ Defendants move to dismiss Barnes' claims on 12(b)(6) grounds. Rule 12(b)(6) permits the court to dismiss an action for failure to state a claim upon which relief can be granted. See Fed.R.Civ.P. 12(b)(6). In considering such a motion, the court must accept as true all allegations in the complaint and all reasonable inferences that may be drawn therefrom, viewed in the light most favorable to the plaintiff. See *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989). The claims may only be dismissed on 12(b)(6) grounds if Barnes cannot demonstrate any set of facts that would entitle it to relief. See *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir.1994); *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir.1988).[1]

### A.  § 1983 and § 1985(3) Claims

Barnes has provided enough of a factual basis in its Amended Complaint for the § 1983 and § 1985(3) claims against the

---

1. In support of its Motion to Dismiss, the Township provides a volume of documents as an appendix, and argues that the volume should be admitted as evidence for purposes of deciding the Motions to Dismiss. See Township's Motion to Dismiss at 19–21; Township's Reply Brief at 2–3. I decline, however, to admit the appendix as substantive evidence, and will decide the issues according to the facts as presented by Barnes in its Amended Complaint and Barnes' Response to the Motions to Dismiss.

Township and the Commissioners to survive the Motions to Dismiss under Rule 12(b)(6). The Motions to Dismiss the claims against the Township and the Commissioners are therefore denied.

The § 1983 and § 1985(3) claims against the Neighbors, although perhaps otherwise cognizable, are dismissed under the Noerr–Pennington Doctrine.[2]

## B. First Amendment Immunity/Noerr–Pennington Doctrine

■ The Neighbors are dismissed from this action due to their first amendment immunity under the Noerr–Pennington doctrine.

■ The Noerr–Pennington doctrine protects citizens from being penalized for exercising their first amendment right to petition government. First recognized in the anti-trust context by the Supreme Court in *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) (*"Noerr"*) and *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965) (*"Pennington"*), and further developed by the Supreme Court in *City of Columbia v. Omni Outdoor Advertising, Inc.,* 499 U.S. 365, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991) (*"Omni"*), the Noerr–Pennington doctrine has been extended to protect citizens in a variety of contexts; for example, see *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993) (Noerr–Pennington doctrine applied to copyright infringement action); (*NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982) (Noerr–Pennington doctrine immunizes citizens from liability for exercising right to boycott); *Video Int'l Prod., Inc. v. Warner–Amex Cable Communications, Inc.,* 858 F.2d 1075 (5th Cir.1988), *cert. denied* 490 U.S. 1047, 109 S.Ct. 1955, 104 L.Ed.2d 424 (1989) (Noerr–Pennington protects defendant from liability for claim of conspiracy with city in violation of civil rights under § 1983); *Gorman Towers, Inc. v. Bogoslavsky,* 626 F.2d 607 (8th Cir.1980) (private citizens immune from liability in § 1983 claim regarding zoning dispute). Like these other courts, the Third Circuit has also applied the Noerr–Pennington doctrine outside of the anti-trust context, to protect citizens from liability for exercising their rights to petition. See e.g. *Brownsville Golden Age Nursing Home, Inc. v. Wells,* 839 F.2d 155 (3d Cir.1988) (applying Noerr–Pennington doctrine to immunize defendants in conspiracy action, on basis that defendants were exercising first amendment rights when alerting authorities to fact that nursing home was failing to comply with applicable regulations).[3]

The claims in this present action all stem from an alleged conspiracy between the various defendants. The crux of the allegations against the Neighbors hinges on their participation in meetings in which they aired their concerns about Barnes.[4] Such behavior is a classic example of activity that the Supreme

---

**2.** There is some issue as to whether or not a conspiracy claim can proceed if one or several of the conspirators are dismissed from the action. Barnes has cited to *Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980) (holding that the dismissal of one defendant under judicial immunity principles does not require the dismissal of the § 1983 action against other defendants).

Here, the dismissal of the Neighbors on first amendment immunity grounds may not necessarily or automatically serve to negate the existence of the alleged conspiracy (since the Neighbors may have illegally conspired with the other defendants apart from their legitimate petitioning activity). Therefore, I will allow the § 1985(3) claim against the remaining defendants to go forward. I will, however, allow defendants to further argue this issue at later stages of the litigation.

**3.** Not all courts are in agreement that the Noerr–Pennington doctrine should be extended to other contexts. See e.g. *LeBlanc–Sternberg v. Fletcher,* 781 F.Supp. 261 (S.D.N.Y.1991) (Noerr–Pennington doctrine cannot be used to shield defendants from liability for discrimination).

**4.** As to the Neighbors, it does not matter that some of the alleged meetings were semi-private, rather than full township meetings, since the private meetings still involved the citizens' participating and airing grievances to local government.

The other main allegation against the Neighbors is that they picketed outside Barnes, which is activity that is clearly protected by the first amendment, and thus is not even at issue here.

Court aimed to protect in developing the Noerr–Pennington doctrine. "In a representative democracy such as this, these branches of government act on behalf of the people and, to a very large extent, the whole concept of representation depends upon the ability of the people to make their wishes known to their representatives. To hold that the government retains the power to act in this representative capacity and yet hold, at the same time, that people cannot freely inform the government of their wishes would ... be particularly unjustified". *Noerr*, 365 U.S. at 137, 81 S.Ct. at 529; see also *Omni*, 499 U.S. at 379–80, 383, 111 S.Ct. at 1353–54, 1355–56 (finding that the right to petition is both a constitutional right, and also a "political" right stemming from citizens' right to participate in government, and that Noerr–Pennington should be used to protect this right); see generally George W. Pring & Penelope Canan, *SLAPP's—Getting Sued for Speaking Out* 15–29 (1996) (the Noerr–Pennington doctrine is a shield that is properly wielded when litigation threatens to chill a petitioner's right to free speech).

▮ It is irrelevant that the Neighbors' petitioning may have been motivated by racism. Under the Noerr–Pennington doctrine, it does not matter what factors fuel the citizen's desire to petition government. As long as there is petitioning activity, the motivation behind the activity is unimportant. See e.g. *Noerr*, 365 U.S. at 139, 81 S.Ct. at 530 ("The right of the people to inform their representatives in government of their desires with respect to the passage or enforcement of laws cannot properly be made to depend upon their intent in doing so"); *Pennington*, 381 U.S. at 670, 85 S.Ct. at 1593 ("*Noerr* shields ... a concerted effort to influence public officials regardless of intent of purpose"); *Omni*, 499 U.S. at 380, 111 S.Ct. at 1354 ("That a private party's political motives are selfish is irrelevant").

▮ The only restriction placed on Noerr–Pennington immunity is that the petitioners must make a genuine effort to influence legislation or procure favorable government action, rather than simply using the petitioning process as a means of interference or harassment (known as "sham exception"). See *Omni*, 499 U.S. at 380, 111 S.Ct. at 1354 (defining "sham" petitioning as a situation in which "persons use the governmental process—as opposed to the outcome of that process—" as a "weapon") [5]; see also *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 500 n. 4, 108 S.Ct. 1931, 1937 n. 4, 100 L.Ed.2d 497 (1988) ("private action that is not genuinely aimed at procuring favorable government action is a mere sham that cannot be deemed a valid effort to influence government action"); *Noerr*, 365 U.S. at 144, 81 S.Ct. at 533 (no immunity when petitioning activity "is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor"). When petitioning is a "sham", first amendment protections do not shield defendants from liability.

The sham exception is inapplicable here. The Neighbors petitioned their local government in order to influence policy and obtain favorable governmental action, thus satisfying the requirements for Noerr–Pennington immunity. (Indeed, the conspiracy allegation rests on this notion that the Neighbors petitioned the other defendants in order to influence the government's actions towards Barnes. See e.g. Amended Complaint at ¶¶ 71–80). Furthermore, Barnes never even alleges that the petitioning here was a sham. See Barnes' Response to the Motions to Dismiss at 53–65.

In spite of the above, Barnes argues that the Noerr–Pennington doctrine should not immunize the Neighbors from liability. In making its arguments, Barnes relies on the Third Circuit opinion in *Phillips v. Trello*, 502 F.2d 1000 (3d Cir.1974) ("*Phillips*"). However, the *Phillips* case is not controlling here. First, *Phillips* does not focus solely on petitioning activity, but also addresses defamation; therefore the standards for first amendment protection in *Phillips* and the

---

**5.** The Court cites an example of "sham" petitioning: "A classic example is the filing of frivolous objections to the license application of a competitor, with no expectation of achieving denial of the license but simply in order to impose expense and delay". *Id.*, citing *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972).

present case are different. See e.g. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789 (1974) (discussing the limited nature of first amendment protection for defamation). Secondly, the Third Circuit only briefly alludes to the *Noerr* and *Pennington* cases in *Phillips,* and never fully explores the Noerr–Pennington doctrine. See *Phillips.* 502 F.2d at 1004. Finally, Barnes' contention that a 1974 Third Circuit decision "absolutely controls" here is misplaced, in light of the fact that the Supreme Court has issued important opinions on the Noerr–Pennington doctrine subsequent to *Phillips* (such as the 1991 *Omni* decision). See Barnes' Response to the Motions to Dismiss at 57.

Barnes fails to offer any valid argument in support of its claim that Noerr–Pennington should not be applied to this case. Therefore, in light of Barnes' failure to support its position, and in light of the clear indication that the Neighbors were doing no more than exercising their rights as citizens to petition local government, I hold that the Neighbors have a right to first amendment immunity, and I dismiss the Neighbors from this case.

## C. Abstention Doctrine

■ I should abstain from adjudicating this matter if the three-prong *Younger* test is satisfied: (1) there are ongoing judicial proceedings in state court; (2) the state proceedings implicate important state interests; (3) the state proceedings present an adequate opportunity to raise all claims brought in federal court. See e.g. *FOCUS v. Allegheny County Court of Common Pleas,* 75 F.3d 834, 843 (3d Cir.1996); see generally *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

■ With regard to the first prong, the defendants argue that there are three ongoing state court proceedings: the appeal to Superior Court of the Orphans Court ruling regarding the trust indenture; the proceedings in front of the Zoning Hearing Board concerning the proposed parking lot and the status of the Barnes as a museum; and the defamation action. Barnes does not dispute the fact that these proceedings are taking place; however, Barnes argues that none of these proceedings satisfy the *Younger* test. See Barnes' Response to Motions to Dismiss at 17.

The defamation action fails the first prong of the *Younger* test. It was filed after the federal action commenced,[6] in direct response to the filing of the federal action,[7] and thus should not be considered an "ongoing" (or "pending" or "threatened") proceeding for purposes of *Younger* abstention. See e.g. *Ankenbrandt v. Richards,* 504 U.S. 689, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992) (it is clearly erroneous to apply *Younger* abstention in absence of pending state prosecution); *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975) (federal court does not have to abstain from issuing injunction if there are no pending state proceedings, since will not disrupt state court and no otherwise available forum to raise constitutional claims); *Steffel v. Thompson,* 415 U.S. 452, 462, 94 S.Ct. 1209, 1217, 39 L.Ed.2d 505 (1974) ("[w]hen no state criminal proceeding is pending at the time the federal complaint is filed, federal intervention does not result in duplicative legal proceedings or disruption of the state criminal justice system", and therefore there is no reason for a federal court to abstain).[8] The defamation

---

**6.** The federal action was filed in January 1996 and the defamation action was subsequently filed in state court in March 1996.

**7.** In the defamation complaint, the plaintiff Commissioners specifically refer to the filing of the federal action as part of the "smear campaign" for which they seek redress in state court. See Defamation Complaint (Exhibit B to Amended Complaint) at ¶¶ 48–50, 52.

**8.** Compare *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975) (holding that a federal court can abstain when state criminal

proceedings are filed after the federal action, but before federal court action has substantively proceeded on the merits). Note that *Hicks* involves a state criminal action stemming from an obscenity law (namely the seizure of "obscene" film from a theater and the prosecution of the theater employees and theater owner) and a federal challenge to the same obscenity law (brought by the theater owner after the arrest of the employees, but before his own arrest). The federal action in *Hicks* therefore was brought prior to the prosecution of the federal plaintiff (the theater owner) but after proceedings against other defendants had already commenced. The Supreme Court

action here was a response to the federal action; therefore, the federal court's adjudication of the federal claim could never be perceived as interfering with the state court proceeding. For this reason, the defamation action fails to satisfy the first prong of the *Younger* test and therefore I will no longer consider it in this discussion.

■ Both the Superior Court appeal and the zoning proceedings were "ongoing" at the time of filing this federal action. However, the Superior Court appeal involves different parties (namely Barnes and the Trust Company and some former Barnes students), and different issues (namely a challenge to the terms of the trust), and cannot be considered an ongoing proceeding for purposes of *Younger* abstention. See Barnes' Response to the Motions to Dismiss at 19; see also *Doran v. Salem Inn, Inc.*, 422 U.S. at 930, 95 S.Ct. at 2567 (federal court not need to abstain if state proceedings involves different parties); *Sullivan v. City of Pittsburgh*, 811 F.2d 171, 177–78 (3d Cir.1987), *cert. denied.* 484 U.S. 849, 108 S.Ct. 148, 98 L.Ed.2d 104 (1987) (abstention is inappropriate if the two proceedings involve different parties with different interests). Therefore, the Superior Court appeal also fails the first prong of the *Younger* test, and, as a consequence, the appeal in front of the Zoning Hearing Board is the only remaining possible basis for abstention.

■ I will now turn to the two remaining prongs of the *Younger* test and determine whether the appeal in front of the Zoning Hearing Board satisfies these.

The parties in the present action debate whether or not the zoning proceeding implicates important state interests, as required by the second prong of the *Younger* test. I do not need to even reach this issue, howev-

er, for the third prong of the *Younger* test is clearly not satisfied here.

In order for the zoning proceeding to serve as a basis for abstention, it must provide the parties with a forum adequate enough to raise constitutional claims. Such a requirement is not met here.

A local zoning proceeding is an insufficient forum to raise federal civil rights claims such as § 1983 claims and § 1985(3) claims. See Pennsylvania Municipalities Planning Code, Pa.Stat.Ann. tit. 53 § 10909.1 (Supp.1995) (Zoning Hearing Board jurisdiction is limited to substantive and procedural challenges to validity of land use ordinance; appeals of decisions made by zoning officers, municipal engineers and officers in charge of developmental rights; and applications for variances and special exceptions). Because the Zoning Hearing Board's jurisdiction is limited in this way, any appeal from the Zoning Hearing Board to the state court would similarly be limited with regard to subject matter. See *id.,* at § 11001–A—§ 11006–A. Therefore, due to its limited jurisdiction, the zoning proceedings are an inappropriate forum in which to adjudicate Barnes' constitutional claims.[9]

The defendants claim that some of the constitutional issues raised in this federal action are at issue in the zoning action. For example, the defendants cite the fact that, in its appeal of the denial of the zoning variance, Barnes called the zoning decision discriminatory, and warned that if discrimination was in fact the motive behind the decision, it would be a violation of Barnes' constitutional rights. Defendants further argue that, because Barnes raised the issue in its appeal, the constitutional claims are preserved for review by the Pennsylvania state courts. See e.g. Township's Motion to

held that the federal plaintiff's interests were already being litigated in state court prior to the initiation of the federal suit, and that the proceedings against him in the state court provided him an opportunity to litigate his constitutional claim. See *id.,* at 349, 95 S.Ct. at 2291–92. Therefore, the *Hicks* situation is distinguishable from the present action, where the state proceeding arose after (and in response to) the filing of the federal claim, and involves entirely separate

issues which have no bearing on Barnes' constitutional interests.

9. Note that even if there was proper jurisdiction, neither the Zoning Hearing Board nor the state court reviewing the appeal would have the authority to award the relief sought by Barnes in the federal action. See *id.,* at § 11006–A (court in land-use appeal cannot award damages or other forms of relief).

Dismiss at 16; Commissioners' Motion to Dismiss at 56–57.

However, the fact that Barnes alluded to discrimination is not dispositive here. The mere mention of discrimination as the potential motive behind the decision to deny the variance and restrict the use of Barnes' property does not mean that the issue of discrimination was properly brought before the Zoning Hearing Board, or that the Board will address it.[10] Under Third Circuit precedent, *Younger* abstention is inappropriate if the federal matter involves issues that will never be adjudicated in the state matter. See e.g. *Heritage Farms Inc. v. Solebury Township*, 671 F.2d 743, 747 (3d Cir.1982), *cert. denied* 456 U.S. 990, 102 S.Ct. 2270, 73 L.Ed.2d 1285 (1982) (court should only abstain if state matter is a criminal or quasi criminal matter, or if the pending state proceeding involves "the precise claims or issues" before the court in the federal case).

Therefore, because the appeal in front of the Zoning Hearing Board does not provide an adequate forum in which to adjudicate the specific constitutional claims brought in the federal matter, the third prong of the *Youn-*ger test is not satisfied here, and abstention is thus inappropriate.

For these various reasons, I will allow Barnes to proceed in federal court to obtain relief for its constitutional claims.[11]

## III. CONCLUSION

In conclusion, in accordance with the above discussion, I find that Barnes has adequately pleaded the § 1983 and § 1985(3) claims and therefore will allow the § 1983 and § 1985(3) claims against the Township[12] and the Commissioners to proceed. I dismiss the Neighbors from this case due to Noerr–Pennington immunity. Finally, I will not abstain under *Younger.*

### ORDER

**AND NOW,** this 3rd day of June, 1996, upon consideration of defendants' Motions to Dismiss and plaintiff's response in opposition to the Motion to Dismiss, for the reasons stated in the Memorandum accompanying this Order, **IT IS ORDERED** that defendants' motions are **GRANTED IN PART AND DENIED IN PART,** as follows:

Barnes: (1) prohibiting defendants from applying existing rules in a discriminatory manner against Barnes; (2) prohibiting defendants from enforcing arbitrary policies against Barnes; (3) prohibiting defendants from intentionally interfering with Barnes' business relationships and prospective business relationships; (4) prohibiting defendants from denying Barnes the right to conduct its operations and enjoy its property free from interference; (5) prohibiting defendants from violating § 1983 and § 1985(3); (6) enjoining the campaign of bad faith harassment carried out through filing retaliatory law suits against Barnes. See Barnes' Letter Brief of May 15, 1996 at 2.

Barnes' request for injunctive relief is broadly fashioned and threatens to pose grave harms to the independence and autonomy of local government. Since this issue is not specifically before me now, I will refrain from ruling on this matter at this time, but will note my concern that the requested injunctive relief poses a threat to the Township's ability to govern and enforce its laws, and may be an improper usurpation of power by the federal court.

10. At most, the Zoning Hearing Board may try to determine whether the variance was improperly denied, or whether or not there was selective enforcement of the zoning ordinances. However, such a determination will not suffice to resolve the issues involved in the equal protection and substantive due process claims alleged here.

   Furthermore, there are issues in this federal action, such as the retaliation claim and the conspiracy claim, that are completely absent from any claim that the Zoning Hearing Board could possibly entertain. These issues are completely separate from the land-use issues and were never raised before. Such issues would not be "preserved for review" in the higher state courts.

11. I note, however, that Barnes seeks various types of relief: compensatory damages, punitive damages, prospective injunction to prevent future uneven application of ordinances and prevent future § 1983 and § 1985(3) violations, and attorney's fees. See Amended Complaint at ¶ 205. During oral argument, I asked Barnes to specifically address the nature of the injunctive relief sought, in order to better determine if such a request is appropriate. This discussion was the impetus for my request that Barnes file a letter brief on this issue. Barnes complied with my request by submitting a letter brief on May 15, 1996. The letter brief specifically identifies the six elements of injunctive relief sought by

12. The Township's motion to strike the punitive damages claim is granted. See *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981) ("a municipality is immune from punitive damages under 42 U.S.C. § 1983").

1. The motions to dismiss the § 1983 and § 1985(3) claims against the Township and the Commissioners are **DENIED**;

2. Defendant Neighbors are **DISMISSED** from this action on grounds of first amendment immunity;

3. The motions to abstain on the basis of *Younger* abstention doctrine are **DENIED**;

4. The motion to strike the punitive damages claim against the Township is **GRANTED**.