In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-2326

DISCOVERY HOUSE, INC.,

*Plaintiff-Appellee,*

*v.*

CONSOLIDATED CITY OF INDIANAPOLIS and
METROPOLITAN BOARD OF ZONING APPEALS
OF MARION COUNTY, INDIANA,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:98-CV-437—**James T. Moody**, *Judge.*

ARGUED NOVEMBER 4, 2002—DECIDED JANUARY 30, 2003

Before BAUER, KANNE, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* Most people are in favor of
programs that help drug addicts shake their addictions.
But a lot of people also do not want drug treatment pro-
grams operating in their neighborhoods. These programs,
some fear (whether the fear is rational or not is anoth-
er question), will bring hoards of drug addicts, many of
whom are embroiled in the criminal justice system, to
"centers" that dispense one drug, methadone for instance,
to the addicts who are trying to free themselves from the
grip of another, more dangerous drug, like heroin. Today's
case is about the drug treatment business and a million

dollar judgment against Indiana's capital city in a dispute that started as a zoning squabble. It raises interesting questions about the scope of remedies available under various laws when a zoning dispute delays the opening of a drug treatment clinic.

Discovery House, Inc. is a for-profit corporation that operates drug-addiction rehabilitation programs. It (and its corporate affiliates) operate about a dozen substance abuse clinics in three states, including one in Indiana. In the fall of 1995, Discovery House hoped to open a methadone distribution facility in Indianapolis. It was told by an employee of the Department of Metropolitan Development that zoning regulations would allow a facility in the site it had chosen. That decision was later challenged by persons opposed to the facility, and in 1996 the Metropolitan Board of Zoning Appeals (BZA) of Marion County, Indiana, determined, after a contested hearing, that the Discovery House facility was not a permitted use for the area, which was zoned for doctor's offices and hospitals. Discovery House filed a writ of certiorari, and an Indiana state trial judge upheld the BZA determination. Discovery House appealed to the Indiana Court of Appeals, which overturned the decision holding that a methadone treatment center was a permitted use under the zoning laws at the requested location. The court of appeals decision was issued in 1998.

One month before the Indiana Court of Appeals decision, Discovery House filed suit in state court, claiming that the BZA and the City (we will refer to both as BZA) violated its civil and constitutional rights under the Americans With Disabilities Act (ADA), the Rehabilitation Act (RA), and the Equal Protection Clause by determining that a methadone treatment center was not a permitted use. The case was removed to federal court, a trial was held, and the jury awarded a little over a million dollars to Discovery House. The damages were awarded for the time

between the BZA denial of a zoning permit and the decision of the Indiana Appeals Court giving Discovery House the green light to open its clinic.

BZA sees a number of things wrong with the result. Its eyesight, as we shall see, is pretty good. One problem involves whether Discovery House has standing to bring this suit under the ADA, the RA, and § 1983. BZA's argument is that the corporation is not protected under the ADA and the RA; for instance, it is not a "qualified individual with a disability" and thus it lacks standing, and because in these circumstances the § 1983 claim tracks the other claims, standing is lacking under that statute as well.

As a constitutional matter, standing involves whether a plaintiff has made out a "case or controversy" between himself and the defendant within the meaning of Article III. Put otherwise, it involves whether the plaintiff has "'alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975), quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962). In addition to constitutional requirements, standing may exist because of statutorily created rights: "[T]he standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth*, at 500.

The question here is whether the ADA and the RA (which run along the same path and can be treated in the same way) grant standing to Discovery House. Title II of the ADA prohibits a public entity from denying equal services to individuals because of their disabilities. The enforcement provision found in § 12133 extends relief not just to "qualified individuals with a disability," but to "any

person alleging discrimination on the basis of disability . . . ." The RA at § 794a(a)(2) extends remedies to "any person aggrieved" by discrimination on the basis of disability.

That a plaintiff in the position of Discovery House qualifies as an entity which may sue to enforce the rights of others under these provisions, or in fact has standing on its own behalf, has been the conclusion of other courts. *See Regional Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35 n.2 (2d Cir. 2002); *MX Group, Inc. v. City of Covington*, 293 F.3d 326 (6th Cir. 2002); *Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37 (2d Cir. 1997), *overturned on other grounds*, *Zervos v. Verizon New York, Inc.*, 252 F.3d 163 (2d Cir. 2001). For purposes of this case, we have no need to agree or disagree with those courts because the reasoning advanced in those cases does not address the problem posed by this case.

For the most part, the cases we just cited concern equitable relief to allow facilities to exist where they had been prohibited. In the case of Discovery House, relief of that kind is unnecessary because the Indiana appellate court has already determined that Discovery House can open its clinic at its desired location. So, Discovery House does not seek equitable relief in this case.

Which brings us to the fact that Discovery House seeks relief which perhaps indirectly will benefit its clients, but which primarily is designed to benefit its for-profit business. Discovery House has won over a million dollars in damages for lost profits for the time period between the BZA decision and its reversal of the BZA decision by the appellate court. The trial record, including the arguments of counsel and the jury instructions, leaves no doubt that it is only lost profits we are concerned with. So our question becomes, does either the ADA or the RA grant Discovery House standing to recover lost profits?

That the nature of the relief sought is a relevant consideration in evaluating standing cannot seriously be contested. In discussing associational standing, the Court says in *Warth* that

> whether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind.

*Warth*, at 515. Even more clearly, the Court stated in *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 120 S. Ct. 693, 706 (2000) that "a plaintiff must demonstrate standing separately for each form of relief sought."

Looking, then, to the nature of the relief sought and the statutes under which standing is asserted, we see no way that either the ADA or the RA contemplates a recovery for lost profits for a business like that of the Discovery House. The remedy provisions of the statutes send us on a maze-like journey that starts with the ADA, § 12133, which states:

> The remedies, procedures, and rights set forth in section 505 of the Rehabilitation Act of 1973 (29 U.S.C. § 794a) shall be the remedies, procedures, and rights this title provides to any person alleging discrimination on the basis of disability in violation of section 202 [42 U.S.C. § 12132].

Looking at § 505 of the Rehabilitation Act (29 U.S.C. § 794a), we find that subsection (a)(1) provides for reme-

dies for employment discrimination, which are clearly not relevant for our purposes. Subsection (a)(2) tells us that

> [t]he remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 [42 U.S.C. §§ 2000d et seq.] shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 504 of this Act [29 USCS § 794].

Continuing our journey, we get to § 2000d, which is not at all helpful. It provides for judicial review in some circumstances, § 2000d-2, but beyond that we look to cases discussing remedies and find, once again, that equitable relief is the order of the day. *See*, *e.g.*, *Hills v. Gautreaux*, 425 U.S. 284 (1976). The one thing that is clear, however, is that lost profits are not expressly provided for.

That is not the end of the inquiry, however, for we also know that "federal courts may use any available remedy to make good the wrong done." *Bell v. Hood*, 327 U.S. 678, 684 (1946). This principle, however, is not without limits. Where a party is wronged by disregard of a statute, and "where it results in damage to one of the class for whose especial benefit the statute was enacted," there is a right to recover damages. *Texas & Pacific R.R. Co. v. Rigsby*, 241 U.S. 33, 39 (1916); *see also Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60 (1992). Discovery House has a claim to standing under the ADA and RA only because it runs a business which provides services—like dispersing methadone—to persons presumably covered by those Acts. If it were running a plumbing business, it could hardly claim relief under either statute. It follows, in our view, that the remedies we may find (other than those specifically set out in the statute) must, at the very least, be those which directly benefit the disabled. It would stretch the principle of *Bell v. Hood*

too far to find that Discovery House has standing to re-cover lost profits under these statutes.

Given that the remedy Discovery House seeks is not available under the two statutes on which it relies—the ADA and the RA—we find that it does not have standing to seek lost profits, and the claims that seek them should have been dismissed from the case. And the dismissal of those claims leaves the § 1983 claim, where the standing question takes on a different form. For a § 1983 claim to exist, there must be a deprivation of either a constitutional right or a federal statutory right, and the action must be taken under color of state law. *Maine v. Thiboutot*, 448 U.S. 1 (1980). When the violation is of a statutory right, a plaintiff runs the risk that a court might decide that the statutory scheme in one way or another forecloses § 1983 relief. *Wright v. Roanoke Redev. and Hous. Auth.*, 479 U.S. 418 (1987); *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1 (1981). In fact, some courts have determined that the ADA is such a statute. *See Grey v. Wilburn*, 270 F.3d 607 (8th Cir. 2001); *Alsbrook v. City of Maumelle, Arkansas*, 184 F.3d 999 (8th Cir. 1999); *Holbrook v. City of Alpharetta, Georgia*, 112 F.3d 1522 (11th Cir. 1997). Our court, how-ever, has consistently declined to find that other similar statutes preclude § 1983 relief when the § 1983 claim is based directly on a constitutional violation, not a statu-tory one. *See, e.g.*, *Trigg v. Fort Wayne Cmty. Sch.*, 766 F.2d 299 (7th Cir. 1985).

Discovery House neatly avoided this potential pitfall. It did not base its § 1983 claim on statutory rights; it claimed in its complaint that the BZA violated its rights under the Equal Protection Clause of the Fourteenth Amend-ment because the decision to turn down its request "was arbitrary and the ordinance was applied and enforced with a discriminatory intent and purpose." Although seek-ing damages for a period of time between the original

BZA decision and the time that decision was reversed on appeal seems somehow inherently wrong, the claim is similar to claims we have previously allowed. In *Forseth v. Village of Sussex*, 199 F.3d 363 (7th Cir. 2000), we distinguished equal protection claims from takings claims. Were the claim a takings claim or one based on substantive or procedural due process, it would be subject to requirements somewhat unusual for a § 1983 claim—the ripeness requirements set out in *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172 (1985). But in *Forseth*, we said that equal protection claims based on land-use decisions can be made independently from takings claims.

Exactly what relief is available is not entirely clear. In *Esmail v. Macrane*, 53 F.3d 176 (7th Cir. 1995), the plaintiff was allowed to go forward with his equal protection claim to recover legal expenses incurred in his effort to get his liquor license applications granted. In contrast, in *Gamble v. Eau Claire County*, 5 F.3d 285, 288 (7th Cir. 1993), we implied that having a state court grant a permit would have "spared" the plaintiff of "all the harm of which she complains." We did not say she would be entitled to damages for the delay in obtaining a permit; in fact, it seems fair to say we implied she would not be. Nevertheless, for purposes of today's decision, we will assume Discovery House's § 1983 equal protection claim is viable. But, as we shall see in a moment, a plaintiff has an uphill fight in prevailing on an equal protection claim in a zoning case.

Given the assumption that damages are available, standing is not an obstacle to the § 1983 claim. A corporation can bring a suit on its own behalf under § 1983 for its own damages. *Adams v. Park Ridge*, 293 F.2d 585 (7th Cir. 1961). The standing issues under the ADA and the RA no longer present obstacles to the suit. Additionally, a "class of one" is viable under the Equal Protection

Clause. *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000).

Although these determinations are a boon to Discovery House's case, the case still has a fatal flaw: there is a lack of evidence of discriminatory intent. The proper level of scrutiny in this circumstance is the rational relationship test, for our case does not involve a fundamental right, and there is no suspect class. Discovery House claims it was discriminated against because its clients are drug addicts. The claim is similar to the one in *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432 (1985), in which the Court determined that the mentally retarded did not form a quasi-suspect classification for equal protection analysis. The standard of judicial review applied to a classification based on mental retardation is that accorded economic and social legislation:  the classification drawn by a statute must be rationally related to a legitimate state interest. In *Board of Trustees of University of Alabama v. Garrett*, 121 S. Ct. 955, 964 (2001), the Court reaffirmed the *Cleburne* standard for equal protection claims based on disability and said that "[s]uch a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose" (citing *Heller v. Doe*, 509 U.S. 312 (1993)). Furthermore, the government entity does not need to articulate its reasoning when the decision is made. The burden is upon the challenging party to eliminate any "reasonably conceivable state of facts that could provide a rational basis for the classification." At 964. So here, the BZA decision must have a rational relationship to a legitimate state interest, and any reasonably conceivable facts can make the classification rational. The fact that the disabled are protected under the ADA and RA, and the fact that some (or most, or all) of Discovery House's prospective "clients" are disabled, is irrelevant.

In *Forseth*, the case in which we allowed an equal protection claim to go forward, we said that absent a fundamental right or a suspect class, for a "viable equal protection claim in the land-use context, the plaintiff must demonstrate 'governmental action wholly impossible to relate to legitimate governmental objectivesl'" At 371, citing *Esmail*. This is a very significant burden.

In addition, we have consistently held that the federal courts are not zoning boards of appeal. *Esmail*; *New Burnham Prairie Homes v. Village of Burnham*, 910 F.2d 1474 (7th Cir. 1990). Similarly, the concurring opinion in *Olech*, *supra*, cautions that zoning decisions "will often, perhaps almost always, treat one landowner differently from another, and one might claim that, when a city's zoning authority takes an action that fails to conform to a city zoning regulation, it lacks a 'rational basis' for its action . . . ." 528 U.S. at 565. *Olech* could proceed, however, because the board had taken "vindictive action" and had exhibited "illegitimate animus" and "ill will."

Here, the record shows that when Discovery House looked into opening its methadone treatment facility, an employee of the Department of Metropolitan Development said the site it selected was in a location where the zoning ordinance permitted such an operation. It was zoned HD-2, which permitted the operation of offices for physicians and other professions dealing with public health, for pharmacies, and for other hospital related uses. Petitions were then filed arguing that Discovery House's proposal for the site was not a permitted use. The BZA held a public hearing on the issue and ruled that in fact it was not a permitted use.

The BZA found that there was no evidence that the Discovery House facility was a hospital or healthcare institution. It concluded that, while a physician would be designated as medical director of the facility, that per-

son would be present only on a part-time basis. No other methadone distribution facilities had been approved in areas zoned HD-2. Importantly, there were two other methadone distribution facilities in Indianapolis, and both were in areas zoned for commercial use. As a result, the BZA concluded that the Discovery House facility was not an office for physicians, dentists, or other professionals dealing with public health as required by the HD-2 zoning ordinance, nor would it be a pharmacy, nor would it offer hospital related services. And so it concluded that Discovery House's proposed facility was not a permitted use under HD-2 zoning.

Discovery House attempts to negate this reason for the decision; it says the BZA members were, in fact, discriminating against its proposed clientele. While that may be a possible conclusion, in the speculative sense, the evidence falls short of proving the point. While several persons who testified against the proposed clinic at the hearing before the BZA might have been motivated by discriminatory intent, there is a paucity of evidence to show that the board itself, or its individual members, were. The motivations of witnesses cannot be held against the decisionmakers.

Additionally, the Marion Superior Court's decision upholding the BZA determination is further evidence that the BZA's assessment of the situation was far from arbitrary and unreasonable. It shows that an independent judicial officer found the BZA decision to be rational and consistent with the zoning laws.

As we close, we note that the trial of this case was permeated with principles relevant to the ADA and RA claims. In fact, Discovery House's brief states that the evidence at trial "must be considered by the reviewing court in light of the purposes of the ADA and the RA, and the various methods of proving discrimination approved by

the federal courts. The goal of the ADA is the 'elimination of discrimination against individuals with disabilities.'" At 31. That is true under the statutes but not under the Equal Protection Clause, which is the only claim left. A fair inference about what happened at this trial is that the equal protection claim was judged under a *de facto* higher lever of scrutiny than the law allows because of the presence of the ADA and RA claims. Because of those claims, the jury was told that discrimination against the disabled is prohibited. The equal protection claim was tried as if there were a suspect classification involved, when in fact there is not, and the decision of the BZA should have been honored unless it was irrational and unrelated to any legitimate governmental interest. This was not established. The lack of evidence of discriminatory animus on the part of the BZA members themselves and the fact that the HD-2 zoning does not without question allow for a methadone distribution facility required an end to the equal protection claim before the case went to the jury.

In short, the ADA and the RA do not grant standing to Discovery House to recover lost profits. For the reasons stated, judgment as a matter of law should have been granted on the equal protection claim. We therefore REVERSE the judgment of the district court denying the Rule 50 motion for judgment as a matter of law and REMAND this case for entry of judgment for the BZA.

A true Copy:

      Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
