

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-14-2005

# Addiction Specialist v. Hampton

Precedential or Non-Precedential: Precedential

Docket No. 04-3707

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Addiction Specialist v. Hampton" (2005). *2005 Decisions*. Paper 919.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/919

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

NO. 04-3707
_____

ADDICTION SPECIALISTS, INC.,


Appellant

v.

THE TOWNSHIP OF HAMPTON, THE TOWNSHIP OF
HAMPTON COUNCIL and THE COMMONWEALTH OF
PENNSYLVANIA,


_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 04-cv-00696-1)
District Judge: The Honorable Arthur J. Schwab

_____

Argued May 3, 2005


BEFORE: McKEE, VAN ANTWERPEN and WEIS, <u>Circuit
Judges</u>

(Filed:  June 14, 2005)

James N. Norris
Kathryn L. Hunter (Argued)
Eckert Seamans Cherin & Mellott, LLC
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
*Counsel for Appellant*

Suzanne B. Merrick (Argued)
Gaitens, Tucceri & Nicholas, P.C.
519 Court Place
Pittsburgh, PA 15219
*Counsel for Appellees*

---

OPINION

---

VAN ANTWERPEN, Circuit Judge

Appellant Addiction Specialists, Inc. ("ASI") brought various constitutional and statutory discrimination claims against the Township of Hampton and Township of Hampton Council (collectively "the Township").[1]  ASI now appeals the September 9, 2004, Order and Opinion of the United States District Court for the Western District of Pennsylvania

---

[1] The Commonwealth of Pennsylvania was initially made a party to this action but was subsequently removed as a party.

2

granting the Township's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The District Court relied on the abstention doctrine articulated by the Supreme Court in Younger v. Harris, 401 U.S. 37 (1971), and held that resolution of ASI's federal claims would impermissibly interfere with an ongoing state proceeding. For the reasons set forth below, we reverse in part, affirm in part, and remand to the District Court for further proceedings consistent with this Opinion.

## I. FACTUAL AND PROCEDURAL HISTORY

A.  *Background*

ASI operates drug counseling and treatment facilities and seeks to open a methadone clinic in the Township of Hampton, which is located in Allegheny County, Pennsylvania. In February 2003, ASI entered into a lease for a property located on Route 8 in Hampton and promptly submitted a "Change of Use Application" with the Township. According to the Township's zoning ordinance, the subject property was located in a "highway commercial district," which includes drug stores, hospitals, medical offices and clinics, business and professional offices, retail liquor sales, and veterinary hospitals.

Pennsylvania state law distinguishes methadone clinics from other "medical clinics" and hospitals. The Municipalities Planning Code ("MPC") prohibits the establishment of methadone clinics "within 500 feet of an existing school, public playground, public park, residential

3

housing area, child-care facility, church, meetinghouse or other actual place of regularly stated religious worship . . . ." MPC § 621 (codified at 53 P.S. § 10621).  ASI asserts that the subject property should not be affected by this prohibition. The Township apparently agreed at first and granted ASI's Change of Use Application on May 29, 2003.

One week later, however, the Township informed ASI that there was a "problem" involving their proposed facility. The Township decided to reevaluate whether the subject property satisfied the requirements of § 621 and held a public hearing on October 29, 2003, to resolve this issue.  At the hearing, a number of Township officials and residents expressed their opposition to the establishment of a methadone treatment facility in Hampton.

At the conclusion of the hearing, the Township found that the subject property was within 500 feet of a school and a public park and therefore rescinded their approval of ASI's Change of Use Application under § 621.  The Township found that a travel agency located next door to the subject property, which offers on-site training to students enrolled in a travel and tourism class at the Community College of Allegheny County, qualified as a "school" within the meaning of § 621.  The Township also determined that the "Depreciation Lands Museum" was a "public park" within the meaning of § 621.

Shortly thereafter, State Representative Jeff Habay, who had spoken in opposition to ASI's Change of Use Application at the hearing, submitted a proposal in the state

legislature to expand the terms of MPC § 621 to prohibit the establishment of methadone clinics in proximity to a museum, an emergency medical service provider, or a liquor store. Moreover, the Township Council amended the Township Zoning Ordinance, adding section 12.400, which prohibits the establishment of methadone clinics within 500 feet of a cemetery.[2]

B.    *State Proceedings*

On December 24, 2003, ASI filed an appeal from the Township's zoning decision with the Court of Common Pleas of Allegheny County, Pennsylvania pursuant to MPC § 1002-A (codified at 53 P.S. § 11002-A). In this land use appeal, ASI alleged that the Township acted arbitrarily and capriciously and abused its discretion by determining that the travel agency qualified as a school and that the museum qualified as a public park under MPC § 621. ASI also alleged that the Township's denial of access to the public accommodations and health services that the ASI facility would provide to disabled individuals constituted unlawful discrimination under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 952, et seq.; the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq.; and the Rehabilitation Act ("RA"), 29 U.S.C. §§ 701, et seq.

C.    *Federal Proceedings*

---

[2] The Depreciation Lands Museum, which is within 500 feet of the subject property, has a cemetery on its premises.

5

While the land use appeal was pending in the state court, ASI filed its federal complaint, which contains seven counts alleging violations of the United States Constitution, the Pennsylvania Constitution, the ADA, and the RA. Specifically, Counts I and II of ASI's Second-Amended Complaint are brought under 42 U.S.C. § 1983. Count I alleges a deprivation of ASI's right to due process, and Count II alleges a denial of equal protection, due to the Township's "pattern and practice of arbitrary and irrational government action. . . ." Second Am. Compl. at 27. ASI seeks injunctive relief, declaratory relief, and damages for these alleged constitutional violations.

Counts III and IV allege violations of the ADA, and Count V alleges violations of the RA. ASI's claims under the ADA and RA allege two types of violations. First, ASI challenges the lawfulness of Pennsylvania's land use policies, alleging that the terms of MPC § 621 itself are in violation of the ADA and RA. Second, ASI alleges that the Township violated these two federal statutes through discriminatory application of the land use policies. In Counts III, IV, and V, ASI seeks injunctive and declaratory relief as well as compensatory and punitive damages for the alleged violations of the ADA and RA. In Count VI, ASI seeks a declaratory judgment that the Township's actions violated the United States and Pennsylvania Constitutions. Finally, in Count VII, ASI alleges that the terms of MPC § 621 and section 12.400 of the Township Zoning Ordinance violate the United States and Pennsylvania Constitutions, the ADA, and the RA. In Count VII, ASI seeks a declaration that these two provisions are null and void and unenforceable.

On September 9, 2004, the District Court held that Younger abstention applied to all of ASI's claims and granted the Township's Motion to Dismiss in its entirety. ASI argues on appeal that the District Court erred in finding that (1) the state land use appeal is still "ongoing" for Younger abstention purposes; (2) resolution of ASI's federal claims would interfere with a state proceeding that involves important state interests; and (3) the land use appeal actually afforded ASI the opportunity to bring its federal claims.

## II.  JURISDICTION

Federal district courts generally have subject matter jurisdiction over claims brought under 42 U.S.C. § 1983, the United States Constitution, the ADA, and the RA pursuant to 28 U.S.C. §§ 1331 and 1343(a).  If those federal claims were properly before the District Court in this case, it also had supplemental jurisdiction over ASI's Pennsylvania state constitutional claim pursuant to 28 U.S.C. § 1367(a).  We have jurisdiction to review the District Court's final order of dismissal under 28 U.S.C. § 1291.  As a threshold matter, however, we must first address whether ASI has standing to bring its ADA, RA, and § 1983 claims in federal court.

## III.  ANALYSIS

A.    *Standing*

The parties did not directly address the issue of

standing in their initial briefs to this Court.[3]  However, "we are required to raise issues of standing *sua sponte* if such issues exist."  Steele v. Blackman, 236 F.3d 130, 134 n.4 (3d Cir. 2001) (citing FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 838 (3d Cir. 1996)).  Accordingly, on April 5, 2005, we requested additional briefing from the parties on the issue of whether ASI has standing to bring its ADA and RA claims.

It is undisputed that ASI meets the constitutional standing requirements of Article III.  See, e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (setting forth three elements for establishing constitutional standing under Article III: injury-in-fact, traceability, and redressability) (citations omitted).  In addition to constitutional standing limitations, the Supreme Court has identified several prudential limitations, including the requirement that a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  Warth v. Seldin, 422 U.S. 490, 499 (1975) (citations omitted).  However, "Congress may grant an express right of action to persons who otherwise would be barred by prudential standing rules."  Id. at 501.  Where Congress grants a right of action to an entity or association, the entity may assert standing either in its own right or on behalf of its members.  Id. at 511.

---

[3] The Township made only a fleeting reference to standing in its discussion of whether ASI's claims implicate an "overwhelming federal interest."

8

[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977).

The Township does not dispute that the broad language of the ADA and RA evidences a Congressional intent to confer standing on entities like ASI to bring discrimination claims based on their association with disabled individuals. As the Second and Sixth Circuits have pointed out, the enforcement provisions of the ADA and RA do not limit relief to "qualified individuals with disabilities." MX Group, Inc. v. City of Covington, 293 F.3d 326, 334-35 (6th Cir. 2002); Innovative Health Sys., Inc. v. City of White Plains, 117 F.3d 37, 47 (2d Cir. 1997). Rather, the ADA grants the right to relief to "any person alleging discrimination on the basis of disability," 42 U.S.C. § 12133, and the RA extends remedies to "any person aggrieved" by unlawful discrimination, 29 U.S.C. § 794a(a)(2).

"Any person" may include individuals as well as entities. The regulations passed pursuant to the ADA specifically extend the protections of the Act to entities such as ASI. 28 C.F.R. § 35.130(g) ("A public entity shall not exclude or otherwise deny equal services, programs, or

9

activities to an individual *or entity* because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." (emphasis added)).[4]  Here, ASI alleges discrimination based on the entity's association with its clientele, and the Township does not dispute that ASI's clients are disabled within the meaning of the ADA and RA.[5]

The Township argues, however, that ASI's standing under the ADA and RA is limited to claims for equitable relief and does not extend so far as to give ASI the right to seek compensatory damages for its lost profits.  The Township relies on the Seventh Circuit's decision in Discovery House, Inc. v. Consol. City of Indianapolis, 319 F.3d 277 (7th Cir. 2003), which also involved ADA and RA

_____

[4] Although this regulation was passed pursuant to the ADA, the broad remedial language of the RA is similarly intended to extend relief beyond qualified individuals with disabilities.  See Frederick L. v. Dep't of Pub. Welfare of Pa., 364 F.3d 487, 491 (3d Cir. 2004) (citing Helen L. v. DiDario, 46 F.3d 325, 330-32 (3d Cir.), cert. denied, 516 U.S. 813 (1995)) ("We have construed the provisions of the RA and the ADA in light of their close similarity of language and purpose."); see also MX Group, 293 F.3d at 333-335 (finding standing under both the ADA and RA); Innovative Health, 117 F.3d at 47 (same).

[5] See 28 C.F.R. § 41.31(b)(1)(i) (including drug addiction as a "physical or  mental impairment" that may qualify an individual as a "handicapped person" under the RA), cited in Bragdon v. Abbot, 524 U.S. 624, 632 (1998).

10

claims against a municipality by a for-profit corporation being denied the ability to establish a methadone clinic. In addressing the corporation's claim for lost profits, the Seventh Circuit concluded:

> Discovery House has a claim to standing under the ADA and RA only because it runs a business which provides services – like dispersing methadone – to persons presumably covered by those Acts . . . . It follows, in our view, that the remedies we may find (other than those specifically set out in the statute) must, at the very least, be those which directly benefit the disabled.

Id. at 281. Because the methadone clinic's lost profits did not directly benefit its disabled clientele, the appeals court reversed a jury award of compensatory damages to the clinic.

We find the Seventh Circuit's analysis to be inapplicable to this case because ASI seeks damages on its own behalf and is thus not bound by the limits that the Supreme Court's decision in Hunt places on associational standing. As noted, Congress may create a right of action where prudential standing rules would otherwise create a bar to suit, and may do so "either expressly or by clear implication." Warth, 422 U.S. at 501. Where an association asserts claims *solely on behalf of its members*, standing "depends in substantial measure on the nature of relief sought." Id. at 515, quoted in Discovery House, 319 F.3d at 280. In such cases of pure associational standing, an

11

association is limited to relief that, "if granted, will inure to the benefit of those members of the association actually injured." Id. However, in addition to bringing suit on behalf of its members, an entity may also be granted "standing *in its own right* to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy." Id. at 511 (emphasis added); see also Havens Realty Corp. v. Coleman, 455 U.S. 363, 372-79 (1982) (holding that a non-profit organization had standing to bring an action in its own right where "'Congress intended standing under [the Fair Housing Act] to extend to the full limits of Art. III'." (quoting Gladstone, Realtors v. Vill. of Bellwood, 441 U.S. 91, 103 n.9 (1979))).

As we understand it, the Seventh Circuit's decision in Discovery House assumes that an entity bringing suit under the ADA and RA must necessarily assert the rights of its members rather than bringing suit "in its own right." This ignores that the protections of the ADA and RA have been extended to shield entities *themselves* from discrimination. Although ASI is protected by these statutes only by virtue of its association with disabled individuals, ASI's standing to sue arises from its own alleged injuries, not those of its clients. See 28 C.F.R. § 35.130(g). As such, we decline to follow the Seventh Circuit's premise that a methadone clinic has standing "only because it provides services . . . to persons presumably covered by those Acts." Discovery House, 319 F.3d at 281.

Here, ASI asserts that the corporation itself suffered injuries based on the Township's alleged violations of its own

12

rights under the ADA and RA. As the Sixth Circuit has stated:

> Because Plaintiff has presented evidence that it was denied a zoning permit because it cares for and/or associates with individuals who have disabilities, Plaintiff has standing to bring this suit on its own behalf. To that end, Defendants' reliance on Hunt, 432 U.S. 333, 97 S. Ct. 2434, 53 L. Ed. 2d 383, is misplaced. . . . [I]n the instant case, Plaintiff is not an association suing solely on behalf of its members. Instead, it is an entity suing primarily on its own behalf, because of injury it suffered as a result of its association with individuals with disabilities.

MX Group, 293 F.3d at 335 (internal citations omitted); see also Regional Econ. Cmty. Action Program, Inc. v. City of Middletown, 294 F.3d 35, 46 n.2 (2d Cir. 2002) (noting that a non-profit organization serving disabled individuals had standing under the ADA and RA "both as an individual plaintiff and under organizational standing theory."). Because the broad language of the ADA and RA enforcement provisions evidences a Congressional intent to extend standing to the full limits of Article III, we hold that the prudential limits imposed in pure associational standing cases do not apply to ASI's claims asserted on its own behalf. Cf. Havens Realty, 455 U.S. at 372; Gladstone, Realtors, 441 U.S. at 103 n.9; Warth, 422 U.S. at 501.

We note further that ASI has standing to seek damages

13

on its own behalf under § 1983.  Counts I and II of the Second-Amended Complaint allege that the Township violated ASI's rights under the Fourteenth Amendment by "selectively enact[ing] and enforc[ing] Township zoning ordinances and the MPC against the Plaintiff. . . ."  Second Am. Compl. at 29.  As with its claims under the ADA and RA, ASI does not assert its § 1983 claims on behalf of individuals with disabilities, but rather brings these claims primarily on its own behalf.[6]

In recognizing that ASI has standing to assert its claims under § 1983, the ADA, and the RA, we of course pass no judgment as to the merits of those claims.  Moreover, we do not reach the issue of whether ASI's lost profits would be the correct measure of damages if and when this suit reaches the damages stage.  We hold only that ASI has standing to *seek* damages on its own behalf.  We therefore will not affirm

---

[6] We have previously noted that a corporation has standing to bring constitutional claims on its own behalf.  Safeguard Mut. Ins. Co. v. Miller, 472 F.2d 732, 733 (3d Cir. 1973); see also First Nat'l Bank v. Bellotti, 435 U.S. 765, 780 n. 15 (1978) (recognizing that corporations are persons within the meaning of the Fourteenth Amendment); Pierce v. Society of Sisters, 268 U.S. 510, 535 (1925) (recognizing the ability of corporations to protect property rights in federal court); Gwynedd Properties, Inc. v. Lower Gwynedd Township, 970 F.2d 1195 (3d Cir. 1992) (entertaining a development corporation's § 1983 due process claim alleging that a municipality violated the corporation's right to reasonable use and development of its land); Heritage Farms, Inc. v. Solebury Township, 671 F.2d 743 (3d Cir. 1982) (same).

the District Court's dismissal on standing grounds, and we will go forward to determine whether the District Court properly applied the Younger abstention analysis to ASI's claims.

B.      *Overview of Younger Abstention*

A federal district court has discretion to abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding.  Younger, 401 U.S. 37.  However, "abstention rarely should be invoked," Ankenbrandt v. Richards, 504 U.S. 689, 705 (1992), and is only appropriate "in a few carefully defined situations," Gwynedd Properties, 970 F.2d at 1199.  Younger abstention is only appropriate where the following three requirements are satisfied: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims.  Id. at 1200 (citing Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982); Schall v. Joyce, 885 F.2d 101, 106 (3d Cir. 1989)).

"We exercise plenary review over the legal determination of whether the requirements for abstention have been met.  Once we determine that the requirements have been met, we review a district court's decision to abstain under Younger abstention principles for abuse of discretion." Gwynedd Properties, 970 F.2d at 1199 (citations omitted).  In conducting this review, we are mindful that the mere

15

existence of a pending state proceeding between the parties that parallels the facts of the federal action is not in itself sufficient. Id. at 1201. All three prongs must be satisfied in order for a federal court to properly abstain from exercising its jurisdiction over a particular complaint.

C.    *Ongoing State Proceedings*

ASI first argues that the land use appeal is no longer "ongoing" because the Allegheny County court stayed proceedings in the land use appeal pending the outcome of the underlying federal proceedings.[7] We disagree and find that the state proceedings are "ongoing" for Younger abstention purposes, notwithstanding the state court's stay of proceedings, because the land use appeal was pending at the time ASI filed its initial complaint in federal court. In addressing a similar issue, the Ninth Circuit stated:

> It is irrelevant that the state mandamus action was stayed by the stipulation of the parties to allow the federal suit to proceed. . . . [O]ur inquiry on prong one of the Younger test is not what is currently occurring in the state proceedings, but is focused on the narrow

---

[7] ASI initially claimed that the state proceedings were stayed on June 9, 2004. However, the Court of Common Pleas did not enter an order or make any statements on record formally entering a stay on that date. In response to a request to clarify the status of the land use appeal, the Allegheny County Court of Common Pleas finally entered a formal order staying the proceedings on May 3, 2005.

question of whether they were pending at the time the federal suit was filed. . . . Because the whole point of <u>Younger</u> abstention is to stop federal interference with state proceedings, it seems backwards to reject abstention because the state proceedings have been stayed to allow the federal case to proceed. This is exactly the interference that <u>Younger</u> abstention is designed to prevent.

<u>San Remo Hotel v. City & County of San Francisco</u>, 145 F.3d 1095, 1104 (9th Cir. 1998) (citations omitted).

Moreover, the municipal defendant in this case has consistently invoked the abstention doctrine and cannot be said to have somehow waived abstention by conceding that the land use appeal has been stayed. The Supreme Court has held that a state or municipal defendant may "voluntarily submit to federal jurisdiction even though it might . . . have a tenable claim for abstention." <u>Ohio Civil Rights Comm'n v. Dayton Christian Sch.</u>, 477 U.S. 619, 626 (1986); <u>see also</u> <u>Brown v. Hotel Employees</u>, 468 U.S. 491, 500 n.9 (1984); <u>Ohio Bureau of Employment Services v. Hodory</u>, 431 U.S. 471, 480 (1977) ("If the State voluntarily chooses to submit to a federal forum, principles of comity do not demand that the federal court force the case back into the State's own system."). However, as was the case in <u>Dayton Christian Sch.</u>, "there was no similar consent or waiver here, and we therefore [continue to] address the issue of whether the District Court should have abstained from deciding the case." 477 U.S. at 626.

17

D.     *Important State Interests*

        We note at the outset our agreement with the District Court's finding that zoning and land use issues are of traditional significance to states.  See Heritage Farms, 671 F.2d at 747.  As such, it may often be appropriate to invoke abstention to avoid deciding land use cases in federal court, particularly where a state court has already undertaken a review of the local zoning decision at issue.  However, the mere fact that the factual background of a case arose out of a land use dispute is not enough to say that the federal proceeding would interfere with state proceedings that involve important state interests for Younger abstention purposes.  Gwynedd Properties, 970 F.2d at 1201; see also Heritage Farms, 671 F.2d at 748 ("It is incumbent upon district courts, faced with a claim arising out of land use questions, to examine the facts carefully to determine what the essence of the claim is. . . .  [T]he mere presence of land use issues should not trigger a mechanical decision to abstain.").

        In addition, resolution of some of the federal claims in a given dispute may implicate important state interests, while other claims for relief can be resolved by the federal courts without any impact on state policies.  In Gwynedd Properties, we held that a federal claim challenging the discriminatory *actions* of township officials in making land use decisions – as opposed to a claim challenging the validity of the state's land use *policies and laws* – did not implicate important state interests for Younger abstention purposes.  970 F.2d at 1202-

18

1203. Relying on our decision in Heritage Farms,[8] we held that where "the federal complaint neither involved nor implicated important state policies," but rather "alleged that members of the [Township] have used their governmental offices . . . to destroy plaintiffs' constitutional rights," the federal court is not faced with "simply a land use case." Id.

In this case, ASI's Second-Amended Complaint contains *both* challenges to the legality of Pennsylvania's land use policies[9] *and* allegations that the actions of Township officials in applying those policies were unconstitutional and in violation of the RA and ADA[10]. The District Court was

---

[8] Although Heritage Farms actually involved "Burford abstention," see Burford v. Sun Oil Co., 319 U.S. 315 (1943), and did not apply Younger, we stated in Gwynedd Properties that, "our opinion in Heritage Farms . . . is instructive, if not controlling" with respect to the distinction between challenges to the terms of land use ordinances and challenges to the application of those ordinances by local officials. 970 F.2d at 1202.

[9] Counts III, IV, and V contain allegations that discriminatory terms of MPC § 621 violate the ADA and RA. Count VII contains constitutional challenges to the terms of both MPC § 621 and section 12.400 of the Township Zoning Ordinance.

[10] Counts I and II allege that the Township violated ASI's Fourteenth Amendment rights through the actions of its officials. Counts III, IV, and V contain allegations that the Township violated the ADA and RA through its discriminatory *application* of the state and local land use policies. Count VI alleges that the Township also violated the United States and Pennsylvania Constitutions through

19

correct in finding that ASI's challenges to the legality of MPC § 621 and the Township Zoning Ordinance implicate important state interests under Gwynedd Properties and Heritage Farms.  The District Court erred, however, by treating all of ASI's claims equally in conducting its analysis under the second prong of the Younger abstention test and did not "adequately examine the facts and claims alleged in the federal and state actions."  Id.  It appears that ASI's claims relating to the Township's alleged discriminatory and unconstitutional actions do not implicate important state interests under Gwynedd Properties and Heritage Farms.

With that said, we noted in Gwynedd Properties that even if the federal claims at issue do not themselves implicate important state interests, "certain aspects of [the] requested relief" may potentially interfere with the state proceeding. Id., at 1204 n.13.  Specifically, a grant of injunctive relief in federal court may "result in a *de facto* review of the township's zoning decisions currently under review in the state courts."  Id. at 1204.  In other words, even though many of ASI's claims do not directly involve important state interests, abstention may still be appropriate if a federal injunction preventing the Township from acting in a discriminatory manner would have the effect of enjoining state proceedings that do involve important state interests. See id. ("the district court proceedings should not be used to review the actions of the [Township] predicated upon proper factors for zoning and planning decisions.").

_____

these actions.

20

As noted, the only state proceedings in this case that implicate important state interests for <u>Younger</u> abstention purposes are those proceedings that relate to the validity of the state and local land use policies themselves. The issue thus becomes whether an injunction enjoining the Township's alleged selective enforcement of the land use policies, if granted, would be tantamount to invalidating the land use policies themselves. We answer this question in the negative. In order to decide whether the Township has engaged in willful and malicious application of the state and local land use policies, the District Court need not touch on the zoning policies themselves or the facial validity of MPC § 621 and section 12.400 of the Township Zoning Ordinance.[11]

Because ASI's claims alleging that the Township, through its actions, violated ASI's constitutional and statutory rights do not implicate important state interests, the District Court abused its discretion by abstaining from exercising jurisdiction over those claims. We will therefore reverse the District Court's decision as to those claims.

---

[11] We note, however, that to the extent ASI seeks to enjoin the enforcement of section 12.400 based on the Township's alleged discriminatory motivations in passing the ordinance, the District Court was correct not to entertain that claim. Our concerns articulated in <u>Gwynedd Properties</u> would be directly implicated by such a claim because any challenge of the Township's actions and motivations in passing the ordinance are inextricably intertwined with the facial validity challenge. The District Court therefore did not err in determining that ASI's claims relating to section 12.400 would impermissibly interfere with the state proceeding.

21

E.      *Opportunity to Raise Federal Claims in a*
        *Pennsylvania State Land Use Appeal*

Having found that ASI's challenges to the state and
local land use policies implicate important state interests, we
will uphold the District Court's decision to abstain from those
claims *if* the land use appeal afforded ASI an adequate
opportunity to raise those claims.  Even where exercising
jurisdiction over certain federal claims would implicate issues
of extreme importance to the state, abstention would still be
inappropriate if the precise claims raised to the federal court
could not be litigated in the relevant ongoing state proceeding.
See Heritage Farms, 671 F.2d at 746-47.

In this case, ASI claims that the Pennsylvania Court of
Common Pleas is unable to consider constitutional and civil
rights challenges to land use statutes and ordinances in the
context of land use appeals.  Citing the Eastern District of
Pennsylvania's opinion in Barnes Found. v. Township of
Lower Merion, 927 F. Supp. 874 (E.D. Pa. 1996), ASI argues
that the ability to adjudicate federal civil rights challenges in
land use appeals is restricted by the limited jurisdiction of
local zoning hearing boards.  Section 909.1 of the MPC
(codified at 53 P.S. § 10909.1) governs the subject matter
jurisdiction of the township zoning hearing boards and does
not specifically empower these administrative bodies to
review the validity of state land use statutes.  ASI asserts that
the Court of Common Pleas is thus prohibited from
considering challenges to land use policies because "any
appeal from the Zoning Hearing Board to the state court
would similarly be limited with regard to subject matter."

22

<u>Barnes</u>, 927 F. Supp. at 879.

We disagree.  First, MPC § 909.1 does in fact empower local zoning boards to entertain "[s]ubstantive challenges to the validity of any land use ordinance."  53 P.S. § 10109.1(a)(1).  Similarly, MPC § 1006-A specifically grants the Court of Common Pleas the power in land use appeals to invalidate local zoning ordinances.  53 P.S. § 11006-A. Therefore, ASI's challenge to the validity of section 12.400 of the Township Zoning Ordinance was fully available in the land use appeal, and the District Court thus did not abuse its discretion by applying <u>Younger</u> abstention to that claim.

The only remaining question is whether challenges to the validity of the State Municipalities Planning Code may be adjudicated in a land use appeal.  Again, we disagree with ASI's contention that the Court of Common Pleas' jurisdiction is necessarily restricted by the limited subject matter jurisdiction of the Zoning Hearing Board.  ASI ignores, as did the Eastern District of Pennsylvania in <u>Barnes</u>, Pennsylvania's Local Agency Law, which allows "[a] party who proceeded before a local agency under the terms of a particular statute" to question the validity of that statute in an appeal of the agency's action.  2 Pa.C.S.A. § 753.  Moreover, 2 Pa.C.S.A. § 754(b) allows for reversal of an administrative action by the reviewing court if there has been a violation of constitutional rights.  Therefore, we believe that ASI could raise the issue of the validity of MPC § 621 in the land use

23

appeal.[12]

We are not certain, however, that all of ASI's claims alleging the discriminatory nature of § 621 are fully available in the land use appeal. ASI's federal complaint contained three types of challenges to the terms of § 621. In Counts III, IV, and V, ASI claims that § 621 violates the ADA and RA and seeks (1) to enjoin the enforcement of the statute, and (2) to recover damages under the ADA and RA. The third type of challenge, contained in Count VII, alleges that § 621 violates the United States and Pennsylvania Constitutions and seeks declaratory and injunctive relief.

MPC § 1006-A sets forth the relief the Court of Common Pleas may grant in land use appeals and does not

---

[12] Although § 753 requires parties to raise all issues before the local agency, "notwithstanding the fact that the agency may not be competent to resolve such question," the reviewing court may consider issues not raised before the local agency upon a showing of due cause. 2 Pa.C.S.A. § 753(a). The Commonwealth Court of Pennsylvania has stated that constitutional challenges in particular need not be raised before the agency in order to be considered by the Court of Common Pleas. Newcomer v. Civil Service Comm'n of Fairchance Borough, 515 A.2d 108, 110 (Pa. Commw. Ct. 1986); see also Gentlemen's Retreat, Inc. v. City of Philadelphia, 109 F. Supp. 2d 374, 380 (E.D. Pa. 2000) ("[The third] prong is satisfied, however, even if the constitutional claims could not be raised in an administrative proceeding but could be raised in a state-court review of that administrative proceeding.") (citing Dayton Christian Sch., 477 U.S. at 629).

24

specifically empower the court to award damages. Our review of Pennsylvania case law also seems to indicate that damages may not be available in a land use appeal. See J.B. Steven, Inc. v. Bd. of Comm'rs of Wilkens Township, 643 A.2d 142, 147 (Pa. Commw. Ct. 1994) ("the sole difference between the statutory [land use] appeals and the mandamus actions is the possibility that JBS could be awarded damages in the equity suit."); see also Hankin Family P'ship v. Upper Merion Township, No. 01-1622, 2002 U.S. Dist. LEXIS 4987, at *22 (E.D. Pa. 2002) (noting that, under § 1006-A, the Court of Common Pleas may only determine whether an ordinance is valid, but "[c]onversely, in federal civil rights suits, a plaintiff may seek compensatory damages."). Rather, there appears to be a two-step procedure for seeking damages arising from the unfavorable application of a zoning ordinance in Pennsylvania. The first step is to challenge the ordinance through a land use appeal, and if that challenge is successful, the party may then file a separate mandamus action to recover damages arising from the application of the now-invalid ordinance. See Unger v. Hampton Township, 263 A.2d 385, 388-89 (Pa. 1970); J.B. Stevens, 643 A.2d at 147.[13] Within this framework, damages are *probably* unavailable in the land use appeal itself.

_____

[13] Compare Stoner v. Township of Lower Merion, 587 A.2d 879 (Pa. Commw. Ct. 1991) (permitting an action for damages in mandamus to go forward without first completing a land use appeal where the plaintiff did not seek to challenge of the validity of the land use ordinance).

25

Although we have gleaned this framework from our reading of Pennsylvania case law, we have not found any state statute or decision from the Supreme Court of Pennsylvania definitively stating that this is the only avenue for seeking damages in zoning cases. We have also been unable to find any state statute or decision of Supreme Court of Pennsylvania expressly prohibiting the Court of Common Pleas from awarding damages in a land use appeal. Thus, although ASI has not yet requested damages in state court, its ability to do so has not been expressly foreclosed under state law.[14] To the extent that Pennsylvania law on the availability of damages in a land use appeal is uncertain, we are faced with a scenario that our decision in Gwynedd Properties does not address – a claim, the availability of which may be

---

[14] We also note the Supreme Court of Pennsylvania's decision in Jonnett v. Bodick, 244 A.2d 751 (Pa. 1968). There, the plaintiff did not pursue a land use appeal and instead filed a separate action for damages arising out of an unfavorable zoning decision. In dismissing the damages claim, the court noted that the plaintiff "had *a full statutory remedy* which he chose to ignore" in the land use appeal. Id. at 753 (emphasis added). The phrase "a full *statutory* remedy" may be interpreted, consistent with our reading of the procedure for seeking damages under Pennsylvania law, as only referring to the injunctive relief expressly made available by statute (i.e. MPC § 1006-A). However, we have found no definitive statement from the Supreme Court of Pennsylvania adopting this interpretation. As such, the court's finding that a land use appeal provides a "full" remedy creates at least some ambiguity in our analysis regarding whether the Court of Common Pleas would be able to adjudicate a claim for damages in this case.

unsettled under state law, that was raised in federal court but has yet to be raised in the relevant ongoing state proceeding. Although not directly applicable to this case, the Supreme Court's decision in R.R. Comm'n of Tex. v. Pullman, 312 U.S. 496 (1941), counsels against deciding unsettled issues of state law where it is not necessary to do so. See id. at 499-500.

We find, however, that we need not decide this state law issue in order to resolve the question before us – whether Younger abstention is applicable to ASI's claims for damages. As noted, Younger abstention is only appropriate where the precise claims raised in federal court *are available* in the ongoing state proceedings. Where the availability of a claim in state court is questionable, our abstention jurisprudence weighs in favor of retaining jurisdiction. Cf. Ankenbrandt, 504 U.S. at 705 ("abstention rarely should be invoked"); Gwynedd Properties, 970 F.2d at 1199 (abstention is only appropriate "in a few carefully defined situations") see also England v. La. State Bd. of Med. Exam'rs, 375 U.S. 411, 426 (1964) (Douglas, J., concurring) ("The fact that [state law] questions are complex and difficult is no excuse for a refusal by the District Court to entertain the suit.").

Moreover, in considering whether abstention is proper in case such as this one, where ASI may still attempt to seek damages in the ongoing state proceeding, "[t]here is no problem if the federal court merely postpones decision for a time to await an opinion of a state court in an action already pending." Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4246 (1988). The difference

27

between staying the damages action and dismissing it, as the District Court did here, could have a decisive impact on ASI's ability to recover. If the federal court abstains from a claim in which the availability of damages in state court is questionable, and the state court later determines that damages are *not* available, the plaintiff may well have forfeited its federal claims for damages because of untimeliness.

This is particularly true here, where, although uncertain, it appears unlikely that ASI will be able to seek damages in the state land use appeal. Thus, the proper course of action in the face of such uncertainty is for the District Court to retain jurisdiction and stay the damages claims pending the outcome of the state litigation. If ASI does not present its damages claims in the state proceeding, or if they are presented and disallowed in that forum, the claims may then be litigated in the District Court.

Even if we could say with certainty that ASI's claims for damages are not available in the state proceeding, staying the federal damages claims would still be advisable in order to avoid friction between the federal and state courts. Immediate adjudication of the damages claims in federal court could virtually nullify the ongoing state proceeding, even if the land use appeal is limited to ASI's claims for injunctive and declaratory relief. In order to decide whether ASI is entitled to damages based on discriminatory terms in § 621, the District Court would have to first decide whether the statutory terms are in fact discriminatory. This is the same issue that the Court of Common Pleas will have to decide in

28

adjudicating ASI's claims for declaratory and injunctive relief arising from the alleged invalidity of the statute.

Thus, even though the three-pronged <u>Younger</u> analysis may be inapplicable to ASI's claims for damages under the ADA and RA, the District Court should consider staying the proceedings with respect to those claims in order to avoid federal-state friction.[15]  <u>Williams v. Hepting</u>, 844 F.2d 138, 144-45 (3d Cir. 1988) ("[A] district court, when abstaining from adjudicating a claim for injunctive relief, should stay and not dismiss accompanying claims for damages. . .when such relief is not available from the ongoing state proceedings." (citation and internal quotations omitted)); <u>see also</u> <u>Deakins v. Monaghan</u>, 484 U.S. 193, 202-203 (1988) (the

---

[15] We recognize that state court stayed the land use appeal pending the outcome of the underlying federal proceedings and that a stay of these proceedings may be inconsistent with the state court's apparent desire to defer to the federal courts.  However, to the extent that this Court is required to evaluate the status of the land use appeal, we determine only whether it is ongoing for <u>Younger</u> abstention purposes.  Having determined that the land use appeal is still pending notwithstanding the state court's stay, it appears that resolution of certain federal claims would improperly interfere with the state court's ability to decide issues of extreme importance to the Commonwealth, including the facial validity of MPC § 621. Whatever one state court's motivations may have been in granting the stay, the bottom line for our purposes is that a state proceeding involving important state interests is still pending, and the principles of comity underlying <u>Younger</u> counsel against deciding those issues in federal court at this time.

29

Third Circuit's approach "allows a parallel state proceeding to go forward without interference from its federal sibling, while enforcing the duty of federal courts to assume jurisdiction where jurisdiction properly exists." (internal quotations omitted)).

In sum, because only certain forms of relief are clearly available in the land use appeal,[16] we will affirm only the District Court's decision to abstain from ASI's claims for declaratory and injunctive relief relating to the validity of MPC § 621 and section 12.400 of the Township Zoning Ordinance. However, the third prong of the <u>Younger</u> analysis is not applicable to ASI's claims alleging that it is entitled to damages arising from the discriminatory terms of MPC § 621, and the District Court should not have abstained from entertaining those claims.

## IV. CONCLUSION

For the foregoing reasons, we reverse in part and affirm in part the District Court's decision. The District Court abused its discretion in applying <u>Younger</u> abstention to (1) Counts I and II of the Second-Amended Complaint, brought pursuant to 42 U.S.C. § 1983, alleging that the Township's

---

[16] ASI's § 1983 claims for equitable relief under Counts I and II would probably also be available in the land use appeal. However, because those claims relate only to the Township's alleged unconstitutional *actions*, the second prong of the <u>Younger</u> analysis does not apply to the § 1983 claims, and whether the third prong is satisfied with respect to those claims is irrelevant.

30

actions deprived ASI of its rights under the Fourteenth Amendment; (2) ASI's allegations of unlawful discriminatory actions by the Township brought pursuant to the ADA and RA; (3) ASI's ADA and RA claims for damages alleging the invalidity of MPC § 621, 53 P.S. § 10621; and (4) Count VI of the Second-Amended Complaint, requesting a declaratory judgment that the Township's actions violated the United States and Pennsylvania Constitutions. We will, however, affirm the District Court's application of abstention to (1) Count VII of ASI's Second-Amended Complaint, requesting a declaration that section 12.400 of the Township Zoning Ordinance and MPC § 621 are null and void and unenforceable; and (2) ASI's ADA and RA claims for injunctive relief alleging the invalidity of MPC § 621.

We will therefore remand to the District Court with instructions to exercise its jurisdiction in accordance with this Opinion. On remand, the District Court may, within its discretion, stay its adjudication of ASI's federal claims pending the outcome of the state land use appeal.