

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-10-2006

# Taliaferro v. Darby Twp Zoning Bd

Precedential or Non-Precedential: Precedential

Docket No. 05-2253

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Taliaferro v. Darby Twp Zoning Bd" (2006). *2006 Decisions.* Paper 531.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/531

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————

No. 05-2253

—————

LEE TALIAFERRO, SAMUEL ALEXANDER,
BEATRICE MOORE,
and BERNICE WILSON,

Appellants

v.

DARBY TOWNSHIP ZONING BOARD, JOHN
DOUGHERTY, INDIVIDUALLY AND AS A MEMBER
OF THE DARBY TOWNSHIP ZONING BOARD; JESSE
BYRD-ESTES, INDIVIDUALLY AND AS A MEMBER OF
THE DARBY TOWNSHIP ZONING BOARD; LAMONT
JACOBS, INDIVIDUALLY AND AS A MEMBER OF THE
DARBY TOWNSHIP ZONING BOARD; JOHN J.
O'NEILL, INDIVIDUALLY AND AS A MEMBER OF THE
DARBY TOWNSHIP ZONING BOARD; WILLIAM
RYAN, INDIVIDUALLY AND AS A MEMBER OF THE
DARBY TOWNSHIP ZONING BOARD;  DARBY
TOWNSHIP; DELAWARE COUNTY REDEVELOPMENT
AUTHORITY; UNITED STATES DEPARTMENT OF
HOUSING AND URBAN DEVELOPMENT; MAUREEN
HEALY also known as MAUREEN DILUZIO; JOHN DOE;
DETECTIVE JOHN RYAN, MANAGER OF DARBY
TOWNSHIP, INDIVIDUALLY AND AS MANAGER;
SECRETARY MEL MARTINEZ, INDIVIDUALLY AND
AS SECRETARY OF HUD; MILTON R. PRATT, JR.,
INDIVIDUALLY AND AS REGIONAL DIRECTOR OF
HUD

Appellees

—————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 03-cv-3554)
District Judge: Hon. Gene E.K. Pratter

_____

Argued March 9, 2006

Before: ROTH and ALDISERT, Circuit Judges, and
RODRIGUEZ,[1] District Judge

(Opinion filed August 10, 2006  )


Robert J. Sugarman, Esquire (ARGUED)
Sugarman and Associates, P.C.
Robert Morris Bldg., 11th Flr.
100 North 17th Street
Philadelphia, PA 19103

        Counsel for Appellants

James J. Byrne, Jr., Esquire (ARGUED)
Kelly S. Sullivan, Esquire
Curran & Byrne, P.C.
606 East Baltimore Pike
P.O. Box 30
Media, PA 19063

        Counsel for Appellees Township of Darby,
        Darby Township Zoning Hearing Board,
        John Dougherty, Jesse Byrd-Estes,
        Lamont Jacobs, John J. O'Neill,
        William Ryan, and John Ryan

_____

        [1] The Honorable Joseph H. Rodriguez, United States
District Court for the District of New Jersey, sitting by
designation.

Curtis P. Cheyney, III, Esquire (ARGUED)
Swartz Campbell LLC
1601 Market Street, 34th Flr.
Philadelphia, PA 19103

Counsel for Appellees Delaware County
Redevelopment Authority

Lee J. Janiczek, Esquire (ARGUED)
Reilly, Janiczek & McDevitt, P.C.
The Widener Building
One South Penn Square
Suite 210, Mezzanine Level
Philadelphia, PA 19107

Counsel for Appellee Maureen Healy

---

**OPINION OF THE COURT**

---

RODRIGUEZ, District Judge:

On its face, this case presents the Court with the issue of whether neighboring property owners who allege that their property values will be diminished and their neighborhood blighted by the construction of a storage facility have standing to sue under 42 U.S.C. § 1983. The focus of this case is the propriety of the Darby Township Zoning Hearing Board's ("Board") decision to grant a variance, which permitted the construction of a storage facility in a residential zone, and the attendant State court decisions issued in the course of appeal. With the exception of the claim that Appellants' property values will be damaged by the grant of the variance, we will affirm the district court's dismissal of the Amended Complaint because Appellants have not alleged facts clearly demonstrating that they are proper parties to invoke the exercise of the federal court's remedial powers. Insofar as Appellants Taliaferro and

3

Alexander have alleged injuries to their property values and neighborhood arising from the approval of the variance, however, we will reverse the district court's dismissal.

I.

In 1960, Appellee Delaware County Redevelopment Authority acquired by condemnation a nine-acre tract of land in the Township of Darby ("Darby Township"). In furtherance of a twenty-year Urban Renewal Plan, an Agreement was entered into in 1967 by the Redevelopment Authority and a redeveloper, RUPACA, Inc. The Agreement contained a covenant binding the redeveloper and its successors and assigns until April 8, 1980, to devote the property to, and only to and in accordance with, the uses specified in the Urban Renewal Plan, i.e., for residential purposes. There was also a covenant, unlimited as to duration, for non-discriminatory use of the property. (App., Vol. II, 000218a.)

The Property was sold in 1969 to First Urban Redevelopers. First Urban subsequently sold the property to Charles Rappa, who sold it to Appellee Maureen Healy in 2002. No development had occurred between 1969 and 2002. Although located in a partially commercial area, (App., Vol. II, 000063a), the Property was still zoned R-1 residential, so Healy made a variance request to allow the construction of an 800-unit self-storage facility. That request was supported by expert testimony, which concluded that redevelopment to residential use was not economically feasible. (App., Vol. II, 000050a, 000136a.) At the behest of Appellants Lee Taliaferro and Samuel Alexander, the Delaware County Court of Common Pleas remanded an original grant of the variance for additional testimony and evidence, but after further hearings, the Board granted the final request for a variance on May 8, 2003. Appellants again appealed the decision to the Delaware County Court of Common Pleas, which affirmed the Board. Appellants then appealed to the Commonwealth Court, which affirmed the Court of Common Pleas decision. See Taliaferro v. Darby Twp. Zoning Hearing Bd., 873 A.2d 807 (Pa. Commw. Ct. 2005), reh'g denied, (June 1, 2005), and appeal denied, 887 A.2d 1243 (Pa. 2005).

4

II.

In the meantime, the Complaint in this matter was filed in the Eastern District of Pennsylvania on June 9, 2003. Plaintiffs Lee Taliaferro and Samuel Alexander are members of the African-American community in Darby Township and neighboring property owners to the land in question. Plaintiffs Beatrice Moore and Bernice Wilson were residents whose land was condemned pursuant to the Urban Renewal Project. Named as Defendants were the Board and its members, Darby Township and the Manager of Darby Township, the Delaware County Redevelopment Authority, and Maureen Healy.[2]

An Amended Complaint alleged that Appellants brought suit "as citizens and beneficiaries" of the Urban Renewal Plan and subsequent Redevelopment Agreement, because they were promised the benefits of residential redevelopment of the property. Despite the Redevelopment Agreement, however, Appellants alleged that "Darby Township, in order to perpetuate the white majority in the Township, continuously discouraged residential developments by various means, including without limitation, demanding that the developer construct an unnecessary bridge, refusing housing style modifications and informal discouragement." (App., Vol. II, 000147a.) Appellants complained that the Delaware County Redevelopment Authority failed to enforce the terms of the Redevelopment Agreement. They accused the Appellees of conspiring to inhibit and prevent the residential redevelopment of the Property for the purpose of preventing the African-American population in Darby Township from expanding and gaining political control.

Count I of the Amended Complaint sought enforcement of the Redevelopment Agreement, by way of an injunction in order to prevent the use of the property for purposes other than

_____

[2]The United States Department of Housing and Urban Development and two of its officials were originally named in the Complaint but are no longer involved in the case.

5

the residential use specified in the Urban Renewal Plan and Redevelopment Agreement.[3] Count II alleged a claim under 42 U.S.C. §1983 for violation of Appellants' rights of equal protection, substantive and procedural due process, and protection of property. Count III alleged a claim under 42 U.S.C. §1981 for intentional racial discrimination by Appellees "preventing the growth of the community and introducing improper uses into the community to decrease property values and diminishing or curtailing the voting power of the community," as well as "by denying them contracts which were required to protect and promote the [Appellant]s' community [and] by limiting the [Appellant]s' rights as parties before the Board." (App., Vol. II, 000154a.) Count IV alleged conspiracy under 42 U.S.C. §1985(3) and Count V alleged a violation of the Fair Housing Act. Count VI, which attacked the Board's decision to grant the variance, was dismissed by Order of the district court dated September 22, 2004.

III.

In response to Appellees' motions to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), the district court concluded that the Appellants lacked standing to bring the claims asserted, and dismissed the Amended Complaint.

Lee Taliaferro and Samuel Alexander, as members of the African-American community in Darby Township and neighboring property owners, alleged they were injured: (1) by the racially discriminatory policies of the Appellees in curtailing the voting and political power of the African-American community, because the Appellees allegedly made a land use decision granting a variance to allow the construction of an 800-unit self-storage facility instead of the promised residential redevelopment in order to limit the effect of the African-American vote in Darby Township; (2) in that their property values would be diminished and their neighborhood blighted by

---

[3]This count was dismissed as against Defendant Healy on September 22, 2004.

6

the construction of an 800-unit self-storage facility; and (3) because African-Americans have been denied equal treatment under the law in government hearings and meetings in that, at a hearing before the case was remanded by the State court, Board members "discriminately, repeatedly shouted down the protestants who were African-Americans and threatened to expel them from the hearing," (App., Vol. II, 000149a), allegedly based on racial bias. The district court dismissed Taliaferro's and Alexander's claims, and noted that these Appellants had not alleged what, if any, benefit they would receive if the Urban Renewal Plan were implemented. Thus, they neither alleged nor demonstrated that they, as individuals, suffered a concrete injury as a result of Appellees' alleged actions that would be redressed by the relief sought in this action.

Beatrice Moore and Bernice Wilson were residents who were removed pursuant to the Urban Renewal Plan with the alleged promise of an opportunity to return. The district court dismissed their claims because they had not alleged they desired, or would be eligible, to move into residences that might have been constructed under the Urban Renewal Plan.

In summary, the lower court determined that Appellants had not contended that they had been injured personally by Appellees' conduct. Accordingly, because none of the Appellants would receive an actual benefit if the court granted the requested injunction, it found that they lacked standing to bring the Amended Complaint filed in this matter. See Taliaferro v. Darby Twp. Zoning Bd., No. Civ. A. 03-3554, 2005 WL 696880, at *7 (E.D. Pa. Mar. 23, 2005) ("The relief requested . . . would not confer a benefit to any of the parties, as granting an injunction against commercial use of the Property in light of the expired [U]rban [R]enewal [P]lan would not necessarily lead to anything other than maintaining the Property in its present fallow condition.") Alternatively, the court found that abstention, as articulated in Younger v. Harris, 401 U.S. 37 (1971), was appropriate, Taliaferro, 2005 WL 696880, at *10, and further, that the court lacked jurisdiction under the Rooker-Feldman doctrine, id. at *11.

7

IV.

We have jurisdiction over this appeal from a final judgment pursuant to 28 U.S.C. § 1291 and exercise plenary review over a district court's order dismissing a complaint for lack of subject matter jurisdiction.  See, e.g., In re Kaiser Group Int'l Inc., 399 F.3d 558, 561 (3d Cir. 2005); Turicentro, S.A. v. Am. Airlines Inc., 303 F.3d 293, 300 (3d Cir. 2002) (citing Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000)).  In an appeal from a grant of a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), "'we review only whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court.'"  Turicentro, 303 F.3d at 300 (quoting Licata v. U.S. Postal Serv., 33 F.3d 259, 260 (3d Cir. 1994)).  "Challenges to subject matter jurisdiction under Rule 12(b)(1) may be 'facial' or 'factual.'  Facial attacks, like this one, contest the sufficiency of the pleadings, and the trial court must accept the complaint's allegations as true."  Id. at 300 n.4 (citing NE Hub Partners, L.P. v. CNG Transmission Corp., 239 F.3d 333, 341 n.7 (3d Cir. 2001)).

Similarly, our standard of review of a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) is plenary.  Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005).  "[W]e are required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, [viewing] them in the light most favorable to the plaintiff."  Id.  "A Rule 12(b)(6) motion should be granted 'if it appears to a certainty that no relief could be granted under any set of facts which could be proved.'"  Id. at 351 (quoting D.P. Enters., Inc. V. Bucks County Cmty., 725 F.2d 943, 944 (3d Cir. 1994)).

V.

Article III of the Constitution restricts the "judicial power" of the United States to the resolution of cases and controversies.  See Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 471 (1982). Subsumed within this restriction is the requirement that

8

a litigant have standing to challenge the action sought to be adjudicated in the lawsuit. Id. Standing has constitutional and prudential components, both of which must be satisfied before a litigant may seek redress in the federal courts. Id.; Wheeler v. Travelers Ins. Co., 22 F.3d 534, 537 (3d Cir. 1994). Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed. Storino v. Borough of Point Pleasant Beach, 322 F.3d 293, 296 (3d Cir. 2003).

The three elements necessary to satisfy the irreducible constitutional minimum of standing are:

> (1) the plaintiff must have suffered an injury in fact– an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;

> (2) there must be a causal connection between the injury and the conduct complained of; and

> (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

United States v. Hays, 515 U.S. 737, 742-43 (1995). In other words, "the plaintiff must show that he [or she] personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant [and] [t]he injury must be concrete and capable of being redressed by the court should the plaintiff prevail on the merits." Wheeler, 22 F.3d at 537-38 (quotations and citations omitted).

Thus, whether asserting first party standing or third party standing, a plaintiff must state an injury in fact. Storino, 322 F.3d at 295. In Storino, we found a challenge by landowners to a zoning ordinance that made the use of their property as a boarding home into a legal nonconforming use insufficient to confer first party standing. The landowners argued that they would be injured in the future when the nonconforming use was no longer accepted by the city, because they would have to apply

9

for a variance. Because the injury of future costs when applying for a variance was prospective and conjectural, we found that the landowners had not sufficiently alleged an injury in fact that was particularized, actual, or imminent. Id. at 298. Therefore, the landowners did not satisfy the constitutional requirements for first party standing. Id. In addition, we found that the landowners did not have third party standing to challenge the ordinance on equal protection grounds for decreasing the amount of low-to-moderate income housing available in the area. Because the landowners did not suffer an injury in fact themselves, they could not establish third party standing. Id. at 299.[4]

"[A] plaintiff who seeks to challenge exclusionary zoning practices must allege specific, concrete facts demonstrating that the challenged practices harm him, and that he personally would benefit in a tangible way from the court's intervention." Warth v. Seldin, 422 U.S. 490, 508 (1975). This Court has found injury allegedly suffered by potential tenants of a low-income housing project sufficient to confer standing to sue public officials where the individuals already were public housing tenants who would have suffered a particular injury if the development was not built. Resident Advisory Bd. v. Rizzo, 564 F.2d 126, 130 (3d Cir. 1977).

Further, we have found that a claim that a building project would increase traffic, pollution, and noise in the area residents' neighborhood was sufficiently concrete and particularized. Society Hill Towers Owners' Assoc. v. Rendell,

---

[4]Litigants may bring an action on behalf of third parties only in limited circumstances, when: (1) the litigant has suffered an injury in fact, giving him a sufficiently concrete interest in the outcome of the issue; (2) the litigant has a close relation to the third party; and (3) there exists some hindrance to the third party's ability to protect his own interest. Powers v. Ohio, 499 U.S. 400, 411 (1991) (citing Singleton v. Wulff, 428 U.S. 106, 111-16 (1976); Craig v. Boren, 429 U.S. 190 (1976)).

10

210 F.3d 168, 176 (3d Cir. 2000). There, we held that a group of residents of a particular neighborhood, Society Hill, in Philadelphia, Pennsylvania, had standing to sue the Mayor of Philadelphia, the Secretary of Housing and Urban Development, and the Department of Housing and Urban Development ("HUD"), challenging HUD's approval of a grant to Philadelphia to assist in funding development of a hotel and parking garage in Society Hill. 210 F.3d at 168. Under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701 et seq., the National Historic Preservation Act ("NHPA"), 16 U.S.C. § 470f, and the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, the plaintiffs alleged that the project that the City was funding would decrease their property values. Id. at 176. Cautioning against "conflat[ing] issues of standing and questions of proof," id., we concluded that this was a sufficiently concrete and particularized injury:

> The Residents have alleged concrete and particularized injury in the form of increased traffic, pollution, and noise that will detrimentally impact the ambiance of their historic neighborhood and their ability to use and enjoy the Penn's Landing waterfront. They assert that the impact of the proposed project on their neighborhood will decrease their property values. There is no assertion that these claims are disingenuous or that the Residents claim these injuries merely to manufacture a jurisdictional case or controversy that would not otherwise exist. Moreover, the interest of the Residents is anything but manufactured. It is as real as it is fervent, and it is sufficient to give the Residents standing to challenge the requested UDAG grant.

Id. at 176-77.

In addition to alleging actual and specific injury, plaintiffs must demonstrate a causal connection to a defendant's alleged conduct. Warth, 422 U.S. at 493. In Warth, the Supreme Court found that low-to-moderate income residents lacked standing to assert that a neighboring town's zoning

11

regulations and zoning board's actions discouraged the construction of low-to-moderate income housing in that town. The Court determined that the inability of the individuals to reside in the neighboring town was a consequence of the economics of the area housing market, rather than of the zoning board's acts. Id. at 506.

Finally, the injury alleged must be redressable by the remedy sought. For example, in Rizzo, we found that granting the relief sought would produce "at least a 'substantial probability' that the [housing] project [would] materialize, affording (plaintiffs) the housing opportunities (they) desire." 564 F.2d at 139 (quoting Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 264 (1977)).

VI.

In this case, accepting as true the material allegations of the Amended Complaint, Appellants have failed to allege an injury in fact that is concrete, particularized, or actual in order to confer standing upon them in regard to a denial of equal treatment as a result of the Appellees' alleged conspiracy to block the construction of residential housing on the Property. Such a claim is generalized, and does not allege any actual injury to the Appellants.[5] Thus, to the extent Taliaferro and Alexander have alleged that Appellees made land use decisions in order to limit the effect of the African-American vote in Darby Township, they have not asserted an actual injury that would confer constitutional standing upon them. That is, Appellants have not demonstrated that they, as individuals, have suffered a concrete loss as the result of Appellees' actions, even if Appellees had acted to ensure that the Property would not be used for low-to-moderate income residential housing.

To the extent Taliaferro and Alexander have alleged

---

[5]There is no indication in the record that any developer was injured by a zoning decision blocking construction efforts or took steps to appeal an adverse ruling.

12

injuries to their property values and neighborhood arising from the approval of the variance, however, we conclude that they have alleged a constitutionally cognizable injury. This injury is not conjectural; they contend that the construction of the storage facility will lower their property values, reduce the aesthetics in their community and create excess noise and traffic, including heavy truck traffic on their residential streets. (App., Vol. II, 000140a-000161a.) As in Society Hill, these injuries are sufficiently concrete and particularized. See also Sierra Club v. Morton, 405 U.S. 727, 734 (1972) ("Aesthetic and environmental well-being, like economic well-being, are important ingredients of the quality of life in our society, and the fact that . . . interests are shared by the many rather than the few does not make them less deserving of legal protection through the judicial process."). Although we have some doubts about the genuineness of their claim in light of their primary emphasis on the effect of the storage facility on their political rights, we cannot say that this injury is so frivolous as to deprive these neighboring property owners of standing. See Growth Horizons, Inc. v. Delaware County, Pa., 983 F.2d 1277, 1281 (3d Cir. 1993) (observing that a district court has jurisdiction so long as plaintiff has standing to make a non-frivolous claim).

Taliaferro and Alexander also meet the causation and redressability prongs of Article III standing. The injury alleged would result directly from the construction of the proposed storage facility and would be redressed if the variance were denied. Therefore, the district court had jurisdiction to decide this claim of the neighboring property owners.

Beatrice Moore and Bernice Wilson were residents who left the neighborhood in question pursuant to the urban renewal project with the alleged promise of an opportunity to return. They have not alleged, however, that they were ready, willing, and able to move back to the area at this time, decades after leaving in 1960. They also have not alleged that their land was taken from them without compensation. (App., Vol. II, 000079a.) Therefore, Moore and Wilson have not suffered any concrete injury; they have only an abstract interest in seeing the Property developed. See Hous. Investors, Inc. v. City of

13

<u>Clanton</u>, 68 F. Supp. 2d 1287, 1294 (M.D. Ala. 1999) (finding that a potential resident in proposed low-to-moderate income housing development, which was not completed due to a zoning decision, lacked standing to sue because he admitted he would not move); <u>Indep. Hous. Servs. of San Francisco v. Fillmore Ctr. Assoc.</u>, 840 F. Supp. 1328 (N.D. Cal. 1993) (individual who never alleged that she wanted to, sought to, could have, or would have lived in the housing development if it were more handicap accessible did not have standing to challenge alleged failure of the development to comply with handicap access laws).[6]

Finally, Appellants seek to assert a claim as members of the African-American community allegedly injured by Appellees' policies of curtailing the voting and political power of the African-American community. Essentially, they argue that they should have standing to assert that the African-American population is being minimized. But the remedy sought is an injunction prohibiting the land in question from being used for anything other than residential purposes. This would not redress Appellants' complaints of the Appellees' failure to implement the Urban Renewal Plan. This Court cannot direct the Appellees to implement the Urban Renewal Plan, even if it had not expired over twenty-five years ago. As the district court observed, an injunction preventing the storage units from being built does nothing to put into place

_____

[6]Further, any claim in the nature of a breach of contract regarding the condemnation of these Appellants' land surely would be barred by the statute of limitations, rendering appropriate dismissal under Federal Rule of Civil Procedure 12(b)(6). Moreover, any claim that there was a breach of the Redevelopment Agreement cannot be sustained because the Appellants were not parties to the contract and because the terms of the contract expired in 1980. Any argument that Darby Township discouraged residential development of the Property and the Redevelopment Authority acquiesced by failing to enforce the terms of the Redevelopment Agreement should have been raised long ago.

14

construction of housing that would draw only African-American residents.

## VII.

Having determined that the district court has jurisdiction to decide the claim of the neighboring property owners because it meets the constitutional standing requirements under Article III, we also find that abstention would be not be appropriate under either Younger or Rooker-Feldman. In general, federal intervention in ongoing state proceedings is precluded in accordance with the abstention theory articulated in Younger v. Harris, 401 U.S. 37 (1971). For the Younger doctrine to apply, state court proceedings must be pending or ongoing, the state proceedings must implicate an important state interest, and the state proceedings must afford an adequate opportunity to raise constitutional issues. Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 408 (3d Cir. 2005) (citations omitted). Here, Appellees' decision has been reviewed extensively and with finality by the state courts. See Taliaferro v. Darby Twp. Zoning Hearing Bd., 873 A.2d 807 (Pa. Commw. Ct. 2005), reh'g denied, (June 1, 2005), and appeal denied, 887 A.2d 1243 (Pa. 2005). Because there is no longer any state court action pending or ongoing, resolution of the federal claims cannot impermissibly interfere with such state proceedings, so application of Younger is not appropriate.

Under the Rooker-Feldman doctrine, a district court is precluded from entertaining an action, that is, the federal court lacks subject matter jurisdiction, if the relief requested effectively would reverse a state court decision or void its ruling. Whiteford v. Reed, 155 F.3d 671, 674 (3d Cir. 1998) (citing FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 840 (3d Cir. 1996)). As such, application of the Rooker-Feldman doctrine is necessarily limited to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

15

In explaining the jurisdictional bar, this Court has described the Rooker-Feldman doctrine as precluding lower federal court jurisdiction over claims that were actually litigated or those "inextricably intertwined" with adjudication by a state court. Parkview Assoc. P'ship v. City of Lebanon, 225 F.3d 321, 325 (3d Cir. 2000) (citing Gulla v. North Strabane Township, 146 F.3d 168, 171 (3d Cir. 1998)). We have further explained that "a federal action is inextricably intertwined with a state adjudication, and thus barred in federal court under Feldman, '[w]here federal relief can only be predicated upon a conviction that the state court was wrong.'" Id. (quoting Centifanti v. Nix, 865 F.2d 1422, 1430 (3d Cir. 1989) (quoting Pennzoil Co. v. Texaco Inc., 481 U.S. 1, 25 (1987) (Marshall, J., concurring))). See also Exxon Mobil, 544 U.S. at 293 ("In parallel litigation, a federal court may be bound to recognize the claim- and issue-preclusive effects of a state-court judgment," but the federal court is divested of jurisdiction under Rooker-Feldman only where it is asked to redress injuries caused by an unfavorable state-court judgment.). Importantly, if a plaintiff's claim in federal court is inextricably intertwined with a previous state court adjudication, the district court lacks jurisdiction over the claim even if it was not raised in the state court. Id. at 327. We do not find, however, that the claims here were inextricably intertwined with the claims adjudicated in the state system. Moreover, this action was commenced after the Board decision, but well before any state court judgment was reached, so the district court could not have been invited to review and reject such a judgment.

The state courts reviewed, for abuse of discretion, the Board determination that granting the variance would not alter the essential character of the neighborhood nor be detrimental to the public welfare. Throughout the state court process, determinations rested on the decision that because Healy satisfied the criteria necessary to obtain a zoning variance, the Board's findings were supported by substantial evidence. The due process claims of Taliaferro and Alexander, that their properties will be devalued in violation of their constitutional rights, were not actually litigated in state court during the appeal from the Board's decision. Thus, the state courts did not

consider the claims of potential damage to property values and the neighborhood that would arise from approval of the variance. Even though such claims could have been raised during the appeal process, we find that they are not inextricably intertwined with the appellate review of the Board's decision. Federal relief on the property value claims would not necessarily require a finding that the state court judgments were erroneous. See Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 427 (3d Cir. 2003) (finding that the "presence or absence of property rights under state law is not dispositive of the question whether a person has a property interest protected by substantive due process"). That is, a decision in favor of Taliaferro and Alexander on their due process claims would not mean that the Board abused its discretion in deciding that there was substantial evidence to show that Healy satisfied the criteria necessary to obtain a zoning variance under Pennsylvania state law. Therefore, the district court has subject matter jurisdiction over those claims.

## VIII.

The Court is mindful that this case has presented a sensitive issue, with allegations of a policy of perpetuating a white majority in local government, and resultant racial tensions. We cannot allow those allegations to have us take on the "abstract questions of wide public significance," however, especially those already addressed by governmental institutions competent to provide redress. Warth, 422 U.S. at 500 (recognizing that "standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal").

Thus, we reverse the district court's dismissal of the Amended Complaint insofar as Taliaferro and Alexander have alleged that their property values will be damaged by the grant of the variance because such a claim meets the constitutional standing requirements under Article III and because abstention would be not be appropriate. In all other respects, the judgment of the district court is affirmed.

17